The defendant was indicted and convicted for the robbery of Ruth Gilliam. Sentence was twelve years' imprisonment.
 I
Initially it is argued that the evidence is insufficient to support the verdict because the conviction rests on the uncorroborated testimony of an accomplice contrary to the provisions of Alabama Code 1975, Section 12-21-222.
Four witnesses testified for the State. The defense did not present any evidence.
Mrs. Ruth Gilliam testified that around 8:00 on the evening of June 26, 1979, a black man knocked on her door, said that he had run out of gas and asked to use the telephone. Mrs. Gilliam allowed the man to use her telephone, which she testified that he "pretended" to use. The man grabbed Mrs. Gilliam and held a knife to her throat. In struggling with the intruder, Mrs. Gilliam was forced to the floor. A second individual appeared and the first intruder placed a towel over Mrs. Gilliam's face and mouth. She never saw this second intruder and "never heard him open his mouth." The two individuals took "around $35.00 worth of money", her billfold, checkbook, balance books and a clock and also her "master savings book." The robbers fled after tying Mrs. Gilliam's hands and feet.
Mrs. Gilliam identified the knife and the towel her assailants had used in the robbery.
On cross examination Mrs. Gilliam testified that she let the first individual stand on her porch for four or five minutes before she let him in and that the porch light was on.
Mrs. Gilliam stated that she could not identify her attackers the next day at a lineup because she was "in shock." Defense counsel then inquired:
 "Q. And you had seen this person who came in your house for four or five minutes and the very next morning you couldn't identify him in the lineup?
"A. No, because he had his hair —."
* * * * * *
 "Q. Mrs. Gilliam, have you ever at any point identified Mr. Staton as the man who entered your house that night and robbed you? Isn't it a fact that you have never identified him?
"A. I couldn't swear to it. They didn't ask me."
On redirect, the prosecution pursued this line of questioning:
"Q. . . . Why couldn't you identify him?
 "A. Because when I was in — When they had him in the lineup, the night he came to my house he had an afro hairdo, when I went to the lineup he had his hair slicked down."
Mrs. Gilliam testified that she had known Gweneva Miller since she was a small child and that Mrs. Miller's grandmother had "been with" her for fifteen years. Mrs. Gilliam had last seen Mrs. Miller on the Thursday before the robbery which was on Tuesday night.
On re-cross examination of Mrs. Gilliam, defense counsel elicited the following:
 "Q. But the light, the entire time that you talked to the Defendant, was off in the hallway and on the front porch?
 "A. No, it was not on in the hallway. It was on on the porch.
 "Q. And that's where you saw him for four or five minutes?
 "A. Yes, that's the only time I saw him except for his back.
 "Q. . . . You did not identify Mr. Staton in the lineup the day after the crime; is that right?
"A. No, I did not.
 "Q. You did not identify him at the preliminary hearing. And isn't it true that even today sitting right here you cannot say for sure one hundred percent certain that this man walked into your house that night and robbed you; is that correct? *Page 229 
"A. No, I couldn't ___." (Emphasis added)
Mrs. Gilliam was then excused as a witness without further testimony.
Jerry Chandler is a Deputy Sheriff of Calhoun County. He investigated the robbery of Ruth Gilliam. He noticed a wrecker "hooking up" a car "right down from Mrs. Gilliam's house . . . about a hundred foot." On the front seat of the car he found a towel and a pocket knife which Mrs. Gilliam later identified as having been used by her assailants.
In the back seat of the car, Deputy Chandler found a power bill or delinquency notice from the power company addressed to Gregory O'Neal Clay at 1800 McElroy Avenue. Shortly after this, Clay was arrested at this residence.
Chandler recovered some of the stolen merchandise at the Bynum Post Office two days after the robbery.
Deputy Chandler was unable to get any fingerprints off the knife or from anywhere in Mrs. Gilliam's house.
Under cross examination, he testified that he had "no way of tying this car with the Defendant at all."
Henrietta Boozer lived in Pine's Motel Apartment number two. She is the defendant's first cousin. On June 26 she saw the defendant and Gregory Clay at the Pine's Motel between 9:00 and 9:30 P.M.
When she saw the defendant Gweneva Miller was with her. Mrs. Miller had called Mrs. Boozer and told her that "Charles said come pick them up." * * * "Pick them up, and I said who are they. She said me and him (defendant) and Greg." Mrs. Boozer picked Mrs. Miller up at "Jerry's Super Valu over in Bynum" between 9:00 and 9:30 P.M. When Mrs. Boozer picked up Mrs. Miller, Mrs. Miller was carrying a brown shoulder bag. When Mrs. Boozer returned with Mrs. Miller from Bynum, the defendant and Clay were standing in the driveway of the motel by one of Mrs. Boozer's mother's cars.
When Mrs. Boozer arrived they all went inside and she started folding clothes while Mrs. Miller, Greg and the defendant were "sitting talking among each other." Mrs. Miller poured the contents of the bag on the floor, and the three of them looked at the contents. According to Mrs. Boozer the contents included "jewelry and papers". Included was a driver's license with the first name of "Ruth" on it. There was about $9.00 showing and Mrs. Miller "showed Charles and Greg where the other money was, it was about $20.00. She said that was where the money was kept." This money was "in a pouch of some kind, a little green pouch."
Mrs. Miller telephoned her brother-in-law, Walter Rutledge, and he arrived about 10 or 15 minutes later and they (Mrs. Miller, Greg, the defendant and Rutledge) all left together.
Mrs. Boozer didn't know Mrs. Miller until Mrs. Miller started going with the defendant two or three years ago. Mrs. Boozer never saw the defendant with the bag.
Gregory Clay, the accomplice, testified that he first saw the defendant on June 26th around 7:00 or 8:00 that evening at the defendant's house. Present with the defendant was Gweneva Miller. The defendant said that "he knew a place in Bynum we could go to and get some money."
 "He told me that — He was telling me about how to do it and everything and we — He told me to go in and he was going to knock on the door and — for the woman to let him when he rang the doorbell, and he was going to grab her and for me to come in and find the money."
* * * * * *
 "(H)e told me that Gwen (Mrs. Miller) was going to drive the car while we — She was going to drive the car and when we come out of the house and everything."
Clay, Mrs. Miller and the defendant drove straight to the house in Bynum. Clay then related how the defendant gained entrance to the house by telling the woman that he was out of gas and how together they robbed the woman. His version of the way the robbery occurred is substantially identical to Mrs. Gilliam's testimony. *Page 230 
Both Clay and the defendant ran to the car where Mrs. Miller was waiting. In trying to free the key which was stuck upside down in the ignition, the defendant broke the key. They all started running towards the Super Valu Store. At the store, Mrs. Miller made a telephone call while the defendant and Clay ran up a hill, "and she was supposed to have come along in the car." Clay and the defendant went up the hill and over to Pine's Motel and waited outside until Mrs. Boozer and Mrs. Miller drove up.
They all went in Mrs. Boozer's apartment and the defendant got the bag from Mrs. Miller and "he spread the stuff out and we was looking through it."
Clay, Mrs. Miller and the defendant remained at Mrs. Boozer's apartment for approximately thirty minutes before they left with Walter Rutledge.
Clay testified that the defendant was wearing his hair "in an afro" that night. He stated that the knife used by the defendant during the robbery belonged to Mrs. Miller.
Clay also testified that after they got the money they went to Gadsden and bought some heroin. This was about 11:00 or 12:00 that night.
Before making his decision, the trial judge had the following testimony of Mrs. Gilliam read into the record:
 "Q. You mentioned that you were faced downward in a dark room. What room was that?
"A. The front bedroom.
"Q. The light was off in there?
"A. Yes.
"Q. Okay.
"A. My guest bedroom.
 "Q. The lights the entire time you talked to the defendant was on in the hallway and on the front porch?
"A. Not in the hallway.
 "Q. Okay. It was on the front porch. That's where you saw him four or five minutes?
 "A. That's the only time I saw him except for his back.
Defense counsel argued that the reference to the "Defendant" in her cross examination of Mrs. Gilliam "was a slip of the tongue due to (her) inexpertise." Defense counsel argued: "I am sure Mr. Hubbard (Assistant District Attorney) wouldn't contend that a Defendant's lawyer can by his or her phrasing of the question and plea the Defendant guilty."
At trial, the State, in arguing against the defendant's motion to exclude, did not contend that the victim, Mrs. Gilliam, had identified the defendant.
In denying the defendant's motion to exclude the trial judge made the following remarks:
 "Certainly I think the vast majority of the victim's testimony would define (sic) the tryer of fact that they could determine, in fact, that she (Mrs. Gilliam) did not identify the accused, or rather I think the purposes of this examination, the question is is there any testimony that tends to connect the Defendant with the commission of the offense absent the testimony of the accomplice. Now if the tryer of the fact were to accept this particular examination and answer which was read into the record, the Court finds that that would be a testimony that does tend to connect the Defendant with the offense, that is, that the victim by her answer here is stating that the accused was on her front porch and that she saw him on her front porch and then the only other time she saw him was from the back. So, when balancing all of that, the Court is going to deny the motion to exclude at this time."
Only after the court made its ruling did defense counsel move to strike the question and answer "on the basis that it was misphrasing of the question and a slip of the tongue." The trial judge denied this request.
The question we must answer is whether the testimony, excluding that of accomplice Clay, legitimately tends to connect the defendant with the crime charged in the indictment. That is the test of the *Page 231 
sufficiency of the evidence necessary to corroborate the testimony of an accomplice. Alabama Code 1975, Section12-21-222; Senn v. State, 344 So.2d 192 (Ala. 1977); Andrews v.State, 370 So.2d 320 (Ala.Cr.App.), cert. denied, 370 So.2d 323
(Ala. 1979). The testimony of an accomplice "remains in limbo as no evidence at all" until it is corroborated by other evidence tending to incriminate the accused. Leonard v. State,43 Ala. App. 454, 465, 192 So.2d 461 (1966).
Viewing the evidence in this case, we find three factors which, when combined, corroborate the accomplice and tend to connect the defendant with the robbery. While, in this particular case, no single factor is sufficient, their combination is adequate to satisfy the requirements of corroboration.
Initially we note that the defendant was in the company of an accomplice in close proximity in time and place to the commission of the crime. Kimmons v. State, 343 So.2d 542
(Ala.Cr.App. 1977).
Second, the defendant was present with the accomplice when the contents of a bag were emptied on the floor. The jury was authorized to draw a reasonable inference that the items in the bag belonged to the victim because of the circumstances surrounding this examination of the contents of the bag by the accomplice, the defendant and Mrs. Miller; the time and place where it occurred and the time and location of the robbery, the manner in which the three individuals arrived at and left from Mrs. Boozer's apartment; and the fact that among the items in the bag was a driver's license bearing the name of "Ruth" — the victim's first name also being Ruth.
Third, the inferences contained in the testimony of Ruth Gilliam, the victim, tend to connect the defendant to the crime charged and thereby corroborate the testimony of the accomplice. True, Mrs. Gilliam never positively identified the defendant as one of the robbers. However, she was never asked if she "thought" the defendant was her assailant. A witness may testify to facts within his knowledge, although his recollection thereof is vague or imperfect. Alexander v. State,370 So.2d 330, (Ala.Cr.App.), cert. denied, 370 So.2d 332 (Ala. 1979). Mrs. Gilliam's testimony that she could not identify the defendant in the lineup because he had his hair "slicked back" implies that the defendant was indeed in the lineup but that Mrs. Gilliam could not positively identify him because of his changed appearance.
That portion of the record which defense counsel maintains was inadvertently phrased was found by the trial judge to supply the necessary corroboration. The logical and ultimate import of this testimony is that the defendant was present on Mrs. Gilliam's porch and was one of the robbers. Although, as previously stated, Mrs. Gilliam never positively identified the defendant, there is a subtle inference from her testimony that the defendant was the intruder. However, we do not rely solely upon the victim's testimony to corroborate the testimony of the accomplice.
After carefully examining all the evidence, we find that the defendant's conviction was not had on the uncorroborated testimony of an accomplice. Although we find that Clay's testimony was corroborated, it was just barely corroborated by evidence tending to connect the defendant to the crime. Certainly the corroborative evidence in this case was not sufficient in and of itself to support a conviction; yet it need not be. Corroborative evidence need not "be strong, nor sufficient of itself to support a conviction, the criterion being that it legitimately tends to connect the accused with the offense." Moore v. State, 30 Ala. App. 304, 307, 5 So.2d 644
(1941).
The general rule on the sufficiency of corroborative evidence is found in 23 C.J.S. Criminal Law, Section 812 (5) (1961).
 "While the corroborating facts or circumstances must be such as would lead to the inference that accused is guilty, independently of the testimony of the accomplice, and while the corroborating facts or circumstances must tend, at least slightly or in some degree, to implicate accused, the corroborative evidence standing alone, need not absolutely or actually connect *Page 232 
accused with the crime, as any corroborative evidence fairly, reasonably, or legitimately tending to connect accused with the crime charged, or the commission thereof, or from which such connection on the part of accused may reasonably be inferred, or from which such connection on the part of the accused may fairly be inferred, may be sufficient to warrant a conviction, although standing by itself it would be only slight proof of guilt and entitled to but little consideration."
See also Senn v. State, 344 So.2d 192 (Ala. 1977); Miller v.State, 290 Ala. 248, 275 So.2d 675 (1973). This rule must be considered along with the related principle that "evidence which merely raises a conjecture, surmise, speculation, or suspicion that accused is the guilty person is not, . . . sufficiently corroborative of the testimony of an accomplice to warrant a conviction." 23 C.J.S. Criminal Law, Section 812 (5)(b). Uncertain or equivocal corroboration will not suffice.Sorrell v. State, 249 Ala. 292, 31 So.2d 82 (1947).
 "`Any circumstantial evidence is sufficient if it proves that accused was connected with the criminal act or tends to connect him with the commission thereof, or if such connection may reasonably or clearly be inferred from the corroborative evidence; and where the accomplice is strongly corroborated by facts and circumstances connecting accused with the crime, a conviction will be sustained.' 23 C.J.S. Criminal Law, Section 812 (3), p. 109." O'Neal v. State, 53 Ala. App. 133, 140-1, 298 So.2d 62, cert. denied, 292 Ala. 744, 298 So.2d 70 (1974).
 II
The defendant has cited other adverse rulings upon which he predicates error. We have carefully examined each allegation and find all to be without merit. The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.