The defendant was a correctional counselor employed at Draper Correctional Institution in Elmore County. He was involved in the theft of meat from the prison central warehouse and was indicted and convicted for theft of property in the second degree. His sentence of five years' imprisonment was suspended and he was placed on probation. Three issues are presented on this appeal.
 I
The defendant's constitutional rights to a fair and impartial trial were not violated when the State called a "surprise" witness after the jury had been questioned on voir dire.
The voir dire and qualification of the jury are not in the record. At trial, when the State called Roy Robinson to the witness stand, defense counsel objected.
 "MR. SEAY: My problem, Your Honor, is in qualifying the jury in this case, we asked the Court to make the determination as to whether or not any juror was related by blood or marriage to any witness for the State.
 We, also, asked the Court to inquire as to whether or not any juror was acquainted with any of the witnesses for the State."
* * * * * *
 "The State named some witnesses and said, `This is it. These are the witnesses *Page 937 
that we are going to call at this trial. Qualify your jurors with respect to these witnesses.' We did that."
* * * * * *
 "Well, this is just being dirty pool, Your Honor. It deprives us of the right to fairly assess the persons that we would select to sit on the jury."
Defense counsel requested that the witness not be permitted to testify. No request was ever made that the trial judge question the jury to determine if any juror had any association or relationship with the witness.
In response, the District Attorney stated that he "had no knowledge of this witness at the time the case was called for trial."
The trial judge found, and apparently defense counsel agreed, that the witness was not related to any juror by blood or marriage.
 "THE COURT: Mr. Seay, I believe, in looking at the jurors that there is no indication that he would be related by blood or marriage to any of the jurors.
"MR. SEAY: I'll buy that, Your Honor."
The judge also found that when the veniremen were questioned the State's witnesses had not been identified.
 "THE COURT: . . . I do not believe that there was any demand — I see where the question was asked on your voir-dire, `If you are related by blood or marriage to any' of the State's witnesses, but I do not see any demand having been made as to what witnesses the State was going to use.
 "MR. SEAY: Your Honor, I asked, `Are you acquainted with any of the witnesses for the State?'
 "THE COURT: I know that you did, but I don't see where you made any demands for any of the witnesses for the State. And at that time, the jury did not know who all were witnesses —"
* * * * * *
 "The way to determine was if the State witnesses were called by name."
A defendant has no constitutional or statutory right to compel the pretrial discovery of the State's witnesses. Casey v.State, 401 So.2d 330, 333 (Ala.Cr.App. 1981); Dolvin v.State, 51 Ala. App. 540, 543, 287 So.2d 250 (1973); Thigpen v.State, 49 Ala. App. 233, 239-40, 270 So.2d 666 (1972).
Because the defendant had no right to discover the identity of the State's witness prior to trial and apparently did not file any discovery motion, we find no error in the action of the trial judge in allowing witness Robinson to testify.
 II
A review of the facts shows that the testimony of the two accomplices was corroborated as required by Alabama Code 1975, Section 12-21-222.
Calvin Stewart, Jr. was employed as a truck driver by the Alabama Rendering Company of Montgomery. On May 23, 1980, he drove his truck to the prison central warehouse to remove meat scraps of animals remaining after slaughtering and butchering. Stewart testified that the defendant "was supposed to see that it (the scraps and remains) was being loaded." The defendant told Stewart, "There's something on the truck." He also told Stewart to place the meat in an outhouse behind a church located in Elmore County.
Ninety pounds of hamburger meat and ninety pounds of pork roast were loaded on Stewart's truck. This meat was packaged and labeled "for prison use only." Stewart drove his truck to the church and placed fifteen pounds of hamburger meat and fifteen pounds of pork in the outhouse. He left "a couple of pieces" on the back of his truck for himself.
Roy Robinson was an inmate at the Elba Work Release Center who was assigned to the central warehouse. The defendant was his supervisor. He testified that "several times" he loaded "good meat" on the rendering truck for the defendant. On May 23, 1980, he placed some good meat in a metal barrel and loaded it on the truck. Robinson testified that the defendant paid him $15.00. *Page 938 
Warden James C. Cook of Draper Correctional Facility testified that in May of 1980 he had reason to suspect that some of the meat for the prisoners was disappearing. He started an investigation and on May 23rd followed Stewart's truck. At approximately 1:00 on the afternoon of May 23rd, Cook and Ronald Sutton, the warden of Staton Prison followed Stewart to the church where they discovered the meat in the truck and in the outhouse. Stewart was arrested and taken to the county jail.
Cook and Sutton left the meat inside the outhouse. At approximately 4:30 that afternoon the defendant drove his car behind the church where Cook and Sutton were waiting.
The defendant was given his "rights" and asked "what he was doing there." The defendant replied that he had "nothing to say." After the defendant was told that he could leave, he said that he had to use the rest room. Cook testified: "After we talked to Mr. Peoples and told him that he could leave, he didn't leave. He hung around. He said two or three times and pointed to the outhouse, `I think I need to go to the rest room.'" Cook stated that the defendant "mentioned" something about the oil light in his car. Sutton heard the defendant "say something about he had to get some oil in his automobile."
We have covered the legal principles governing the corroboration of accomplices in other cases and need not restate them here. McCoy v. State, 397 So.2d 577
(Ala.Cr.App.), cert. denied, Ex parte State ex rel. Attorney General,397 So.2d 589 (Ala. 1981); Andrews v. State, 370 So.2d 320
(Ala.Cr.App.), cert. denied, Ex parte Andrews, 370 So.2d 323
(1979); Jacks v. State, 364 So.2d 397 (Ala.Cr.App.), cert. denied, 364 So.2d 406 (Ala. 1978); Kimmons v. State,343 So.2d 542 (Ala.Cr.App. 1977).
Because Stewart and Robinson admitted their knowledge of and participation in the theft, they are accomplices as a matter of law and their testimony must be corroborated. Jacks, 364 So.2d at 403.
The evidence necessary to corroborate an accomplice need not be, in itself, sufficient to warrant a conviction. Lumpkin v.State, 68 Ala. 56 (1880). The corroboration need only be of some fact tending to prove the defendant's guilt or tending to connect him with the crime. Senn v. State, 344 So.2d 192 (Ala. 1977); Slayton v. State, 234 Ala. 9, 173 So. 645 (1937). We treated the sufficiency of corroborative evidence in Staton v.State, 397 So.2d 227, 231-32 (Ala.Cr.App.), cert. denied,397 So.2d 232 (Ala. 1981). Applying the criterion we set forth inStaton, we have no difficulty in finding that the testimony of the two accomplices was sufficiently corroborated by evidence tending to incriminate the defendant.
The corroborating evidence in this case is based on the fact that the defendant was placed in close proximity to the stolen meat shortly after it was stolen. Although this fact, in and of itself, would not be sufficient to corroborate the testimony of an accomplice, the circumstances surrounding the defendant's presence at the church bolster and strengthen what otherwise might be a rather innocuous fact. The defendant drove his automobile "behind the church. * * * His car come past the corner of the church." The front of the church was at least 50 yards off the highway. When confronted, the defendant said he had nothing to say although he later attempted to justify his presence by stating that his car needed oil. When told he could go the defendant "hung around" requesting repeatedly to go to the outhouse where Stewart had placed the stolen meat.
The defendant was on land that was not his own, far off the road and behind a church — a suspicious and strange place to be if he really needed oil for his car.
 "The entire conduct of the accused may be surveyed for corroborative circumstances and if from them his connection with the offense may be fairly inferred the requirement of the statute is satisfied. 2 Wharton's Criminal Evidence, Section 746.
 "And statements made by the defendant, in connection with other testimony, may afford corroboratory proof sufficient to *Page 939 
sustain a conviction. 2 Wharton's Criminal Evidence, Section 750.
 "The suspicious conduct of the accused may furnish sufficient corroboration of the testimony of the accomplice. 22 C.J.S., Criminal Law, Section 812, subsec. d, (3), p. 1404; Newsum v. State, 10 Ala. App. 124, 129, 65 So. 87; Crumbley v. State, 26 Ala. App. 24, 152 So. 55, certiorari denied 228 Ala. 45, 152 So. 57; Slayton v. State, 234 Ala. 1, 173 So. 642."
* * * * * *
 "Under some circumstances proof of proximity and opportunity is held to be sufficient in corroboration of an accomplice. Ross v. State, 74 Ala. 532; Crumbley v. State, 26 Ala. App. 24, 152 So. 55." Moore v. State, 30 Ala. App. 304, 306-7, 5 So.2d 644 (1941).
The defendant's "proximity and opportunity to commit the crime" may furnish sufficient corroboration. Jacks, 364 So.2d at 405.
While there is not a large amount of corroborative evidence in this case, the amount present is significant and does incriminate the defendant. "Corroboration need only be slight to suffice." Ingle v. State, 400 So.2d 938, 940 (Ala.Cr.App. 1981). This was not the case in Boles v. State, 21 Ala. App. 356,108 So. 350 (1926). There the defendant was charged with manufacturing whiskey and the possession of a still. The only evidence of the defendant's guilt which could corroborate the testimony of an alleged accomplice was the fact that the defendant was arrested while walking toward the still at a distance of some 50 yards from the still. The court noted: "The defendant did not own or control the land on which the still was found, never went to it, and, so far as the testimony of the officers is concerned, knew nothing about it." Boles,21 Ala. App. at 356, 108 So. 350.
Here we have the defendant's presence which, in and of itself, is suspicious under the facts of this case. In addition, we have the defendant's suspicious actions and explanation while at the scene.
Eliminating the testimony of the two accomplices, and examining the remaining evidence, we find sufficient incriminating evidence to connect the defendant with the commission of the theft. McCoy, supra. The corroboration of an accomplice may be shown by circumstantial evidence. Craig v.State, 376 So.2d 803 (Ala.Cr.App.), cert. denied, Ex parteCraig, 376 So.2d 807 (Ala. 1979); Andrews, supra; Thompson v.State, 374 So.2d 377 (Ala.Cr.App. 1978), affirmed,374 So.2d 388 (Ala. 1979).
 III
It is argued that the State did not prove that the defendant did knowingly obtain or exert unauthorized control over the meat with the intent to deprive the State of the property in violation of Alabama Code 1975, Section 13A-8-4.
In relation to property, "obtains" means "to bring about a transfer or purported transfer of a legally recognized interest in the property, whether to the obtainer or another." Section13A-8-1 (6)(a) (emphasis added). The phrase "obtains or exerts unauthorized control" is also defined by statute. Section13A-8-1 (7).
"A person is criminally liable for an offense if it is committed by his own behavior or by the behavior of another person for which he is legally accountable." Section 13A-2-20. "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense: (1) He procures, induces or causes such other person to commit the offense; or (2) he aids or abets such other person in committing the offense."
Both Robinson and Stewart were acting on the instructions and under the directions of the defendant. Through the testimony of these accomplices the State presented sufficient evidence to authorize the jury to find the defendant guilty beyond a reasonable doubt.
We have answered the questions and issues argued on appeal. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 940