HARRIS, Judge.
Appellant was indicted by the May 1981 term of the Jefferson County Grand Jury for forgery in the second degree in violation of § 13A-9-3(a)(l), Code of Alabama 1975. Trial was had on February 10, 1982, with the jury finding him guilty as charged. Appellant was sentenced pursuant to § 13A-5-9(c)(l), Code of Alabama 1975 to twenty years’ imprisonment. From that conviction he now appeals in forma pauper-is.
Appellant raises two issues on appeal; one concerning the sufficiency of the State’s evidence, and the other dealing with the Habitual Felony Offenders Statute. We need not address the latter issue as, although it was raised in brief on appeal, it was not raised during the trial court proceedings. Thus, the issue is not properly before us. See Smith v. State, 392 So.2d 1273 (Ala.Cr.App.1980).
Ms. Betty Carroll, a teller for Central Bank, testified that on February 2, 1981, she was working at the Greensprings branch of the bank in Birmingham. Around 5:56 p.m. she cashed a check for $350 drawn on one of the Lawson State Community College accounts. The check was made to a Mary Montgomery. She identified the check which she had cashed. Carroll testified that to the best of her recollection the person who presented the check was female.
Donald Nixon testified that from November, 1980, until July, 1981, he was employed as an accountant in the business office of Lawson State Community College. Included in his duties was the reconciliation of the school’s accounts. Sometime in February, 1981, Nixon noticed in the school’s December, 1980, bank statement, dealing with the junior college division financial aid account, certain discrepancies in checks issued by the school. Included in the discrepancies were duplicated cheek issue numbers and improper authorization signatures, improper imprinting of the payee’s name as well as the amount of the check, and improper correlation between the check issue numbers and the check control numbers. In addition, the amounts of the checks appeared inconsistent with what Nixon was accustomed to reviewing. Nixon found nine checks, all made payable to Mary Montgomery, in the amount of $287, bearing the inconsistencies. Every check had been improperly authorized as only the business manager, Edward Scruggs, or the president, Dr. Jesse Lewis, could sign the checks. He reported his findings to his superior, Scruggs. Central Bank was contacted about the discovery. The bank reviewed the account and found six more checks bearing the same inconsistencies in the February, 1981, statement. Nixon stated that the checks had been blank checks, that is, checks not imprinted by the school computer and business office with the above information. He stated that all office employees have access to the office vault wherein the unused checks were stored. Upon finding the questionable checks, Nixon inquired of the office staff of their knowledge concerning them, to which they replied that they had never seen them before. He made a specific inquiry of Mary Cabile, who was responsible for voiding the blank checks, and whose name appeared on one check as authorizing it. Nixon testified that due to the computer printer’s particular method of operation, a few checks will pass through it during a particular check imprinting run unimprinted or blank. The blank cheeks must then be manually voided by Cabile. Nixon identified the nine checks.
*1375 Mr. Edward Scruggs, currently business manager at Huntingdon College, stated that in February, 1981, he was employed in the same position at Lawson State Community College in Birmingham. He testified that only he and the school president were authorized to sign the checks found by Nixon and that both their signatures were required. Scruggs stated that the school employed Mr. James Edwards as financial aid director, but he was not authorized to sign the checks. One of the checks found by Nixon was authorized by “E. Edwards, Adm.”
After being informed of the situation by Nixon, Scruggs called Central Bank which later sent Robert Funderburg, a bank investigator, to the school. Scruggs also contacted the Alabama Bureau of Investigation (ABI), which sent Investigator Marvin Roye to the school. At their meeting, the nine checks found by Nixon, along with the six checks found by Funderburg at the bank, were turned over to Roye. Scruggs identified the nine checks given to him by Nixon.
Scruggs testified in great detail to the office procedure for imprinting and distributing financial aid checks. He explained the origin and purpose of the check issue and control numbers as well as the office procedure for signing and voiding school checks. Scruggs testified that the check issue numbers appearing on the fifteen checks had been previously assigned to properly issued school checks. None of the cheeks contained the proper authorizing signatures. Scruggs stated that the checks were taken in lots of three at five separate times. He stated that the checks could have been taken from Cabile’s office since it was her duty to void them.
Robert Funderburg testified to his meeting with Scruggs and Roye at Lawson State. He stated that he delivered the six checks found by him to Roye. He identified the six checks.
ABI investigator Marvin Roye testified that he became involved in the above incident around February 24,1981. On February 25, he met Scruggs and Funderburg at Lawson State where he received the fifteen checks. He identified the checks. On February 27, he drove to Montgomery and delivered the checks to ABI fingerprint examiner Carol Curly. The checks were subsequently returned to Roye who maintained custody over them until one was turned over to the grand jury and the others turned over to the State at trial.
Roye testified that on March 2, 1981, he arrested appellant at his place of employment and charged him with the instant crime. Appellant was read his Miranda rights, which appellant stated he understood. Roye testified to the proper volun-tariness predicate. In response to Roye’s questions, appellant stated that “he didn’t know anything about the checks.” Appellant made no further statement to Roye.
On February 26, Roye met Donna Evans at the Birmingham office of the Secret Service. Evans used the alias Mary Montgomery. She was transported to the ABI field office where she made a statement. While Evans was there, she called appellant.
ABI fingerprint examiner Carol Curly testified to receiving the fifteen checks from Roye and testing them for latent fingerprints. Her testimony unequivocally established her expertise in the field. From the tests conducted, Curly found twelve of the checks contained latent fingerprints. She compared those found with the known fingerprints of appellant and Evans. Of the twelve checks with latent fingerprints, Curly found the fingerprints of appellant on eight checks and the fingerprints of Evans on two checks. The identified latent fingerprints were photographed and introduced into evidence. The fifteen checks were also introduced into evidence.
Donna Evans testified that she first met appellant in June, 1980. In November, 1980, appellant and she had a conversation about taking some BEOG (Basic Education Opportunity Grant) checks from Lawson State. Appellant told her that the checks would be on the floor on the left side of a chair in a woman’s (Cable’s) office. Appellant drove Evans and another female, whose identity was unknown to Evans, and *1376 another unnamed male to the school. The women went to the business office and asked Cabile about the unidentified woman’s nephew so that Cabile would have to go to her file cabinet. When Cabile turned her back, Evans stated that the other girl took a stack of checks and placed them inside her coat. Then, they left and gave the checks to appellant. Evans stated that some of the checks were already filled in, so they were discarded. She did not see the remaining checks filled in. The next day appellant took her to the college so that she could have a student identification card made and told her how to procure it. In June, 1980, appellant had taken Evans to get a driver’s license. Both were issued in the name of Mary Montgomery, which Evans admitted was an alias that she had used.
Subsequently, appellant drove Evans to various banks to cash the nine checks. Evans endorsed the checks. After giving about $200 or $300 to the girl who had stolen the checks, appellant and Evans divided the remainder. Evans stated that she received about $1000.
In February, 1981, appellant gave Evans six more checks to cash. Evans first saw the checks at appellant’s residence and did not know how he had obtained possession of them. Appellant did not tell her where he had gotten them. Evans stated that the checks had been filled in with, inter alia, the name of Mary Montgomery. Appellant drove Evans to several banks to cash the checks. The process took two days. Evans received about $700 of the $2000 received from the checks. After cashing the checks, Evans had no further contact with appellant.
Evans testified that she was arrested for the instant incident on February 26, 1981. She admitted that she had previously been convicted of theft and prostitution. She made a statement to Roye wherein she stated that appellant enticed her into the scheme and told her how to open bank accounts. She made no mention of the unidentified woman accompanying her to the school, although she had told her lawyer. Evans did not inform the assistant district attorney of such until the day of .appellant’s trial. She stated that she was promised nothing in return for her testifying against appellant. Evans’ testimony concluded the presentation of the State’s case.
Appellant contends that his conviction was based upon the uncorroborated testimony of an accomplice. Ala.Code § 12-21-222 (1975). Consequently, he asserts that the trial court erred in denying his motion to exclude the State’s evidence.
Evans admitted her knowledge of and participation in the instant crime. Thus, she is an accomplice as a matter of law and her testimony must be corroborated. Peoples v. State, 418 So.2d 935 (Ala.Cr.App.1982). The general rules governing the determination of the sufficiency of corroborative evidence have been stated many times by this court. They need not be reiterated here. See Harris v. State, 420 So.2d 812 (Ala.Cr.App.1982); Peoples, supra; Mathis v. State, 414 So.2d 151 (Ala.Cr.App.1982); Ware v. State, 409 So.2d 886 (Ala.Cr.App.1981), cert. denied, 409 So.2d 893 (Ala.1982); Jacks v. State, 364 So.2d 397 (Ala.Cr.App.), cert. denied, 364 So.2d 406 (Ala.1978).
The corroboration need only be of some fact tending to prove the accused’s guilt or tending to connect him to the crime. Thompson v. State, 374 So.2d 388 (Ala.1979); Peoples, supra. While speculation and suspicion will not support a conviction based on the uncorroborated testimony of an accomplice, the weakness of the corroborating evidence, in and of itself, does not preclude a finding that such evidence tends to connect the accused with the commission of the crime. Where such a finding is made, the weakness and inconelusiveness, vel non, of the corroborating evidence is determined by the jury. Thompson, at 390-91; Staton v. State, 397 So.2d 227 (Ala.Cr.App.), cert. denied, 397 So.2d 232 (Ala.1981).
The credibility and veracity of an accomplice and a conviction based upon the corroborated testimony of such are matters *1377 to be determined by the jury. See Holt v. State, 383 So.2d 895 (Ala.Cr.App.), cert. denied, 383 So.2d 897 (Ala.1980).
There is no doubt that the instruments in question possessed “some apparent legal efficacy” and the “reasonable possibility that they may operate to cause injury.” Johnson v. State, 412 So.2d 822, 825 (Ala.Cr.App.1981). Consequently, if the testimony of Evans was sufficiently corroborated, the State met its burden of proving a prima facie case of second degree forgery. See Finney v. State, 348 So.2d 876 (Ala.Cr.App.), cert. denied, 348 So.2d 878 (Ala.1977); Code § 13A-9-3(a)(1).
We find the fingerprint evidence linking appellant with the stolen checks sufficiently corroborative of Evans’ testimony. Appellant’s fingerprints were found on eight checks, while two bore the fingerprints of Evans. Of those checks, one was found to have the fingerprints of both appellant and Evans on it. This check was identified by Carroll and cashed by her when presented by a woman Carroll could not identify. This evidence is sufficient to connect appellant with the commission of the crime and corroborate Evans’ testimony. Consequently, we find no error in the trial court’s overruling of appellant’s motion to exclude.
Having determined the issues raised by appellant adversely to him, and having carefully searched the record for errors injuriously affecting the substantial rights of the appellant and determined there are not, we affirm the judgment of conviction.
AFFIRMED.
All the Judges concur.