The appellant, John Beavers, was convicted of the offense of burglary in the third degree in violation of § 13A-7-7, Code ofAlabama (1975). The appellant was sentenced to 30 years in the State penitentiary pursuant to the Habitual Offender Act.
Ricky Bentis, an admitted accomplice, testified that he and the appellant devised and executed a plan to burglarize the home of Eston Cook, who was Bentis's employer. Bentis testified that they made their plans according to Cook's practice of attending church every Sunday; however, Cook did not go to church on the Sunday in question. Therefore, in order to lure him away from his home, they threw a brick through the window at his place of business, and then Bentis telephoned the police and told the dispatcher about the window being broken; he gave the name of "Steve Perry" and a false address. They listened to the police dispatcher in order to know when Cook was contacted, whereupon they telephoned his residence and found that he was still at home. They waited until Cook and his wife departed and then Bentis drove Beavers, the appellant, to a location close to the house, let him out, and then drove around for a while. Bentis testified that when Beavers got back into the car, he noticed that the garage was open and that the appellant was carrying a money bag. He claimed that Beavers told him that he had gone through the garage and kicked in the kitchen door.
Cook testified that on Sunday night the police called him and told him that a window at his place of business had been broken, and that just before he left, he received a second call in which the caller simply hung up. Upon his return, Cook found the garage door partially open, the kitchen door kicked in, and a money bag missing. Cook further testified that he had seen the appellant at work looking for Bentis prior to the burglary.
Carol Stewart, a police dispatcher, testified she took a telephone call reporting a brick being thrown through the window of Cook's business on the night in question. She then filled out a complaint card, entered it on the computer, and sent it to the records department. At trial, she identified a copy of the recording of the telephone call as containing her voice and further *Page 614 
testified that it was accurate as to the conversation that occurred. Five witnesses identified the the voice on the tape reporting the broken window and giving the name Steve Perry, and identified it as the voice of the appellant.
 I.
The appellant argues that the trial court erred in denying his motion to exclude the testimony of the accomplice based on the failure of the State to present corroborating evidence. The appellant cites Harris v. State, 420 So.2d 812 (Ala.Cr.App. 1982), for the statement of the law in Alabama regarding the corroboration of accomplice testimony:
 "The formula applied to the corroboration statute, Alabama Code § 12-21-222 (1975), requires that the evidence of the accomplice must first be eliminated and then, if upon review of all the other evidence before the trial court at the time of the motion to exclude, there is found to be sufficient incriminating evidence which would tend to connect the accused with the crime, sufficient corroboration exists. Ware v. State, 409 So.2d 886
(Ala.Cr.App. 1981), cert. denied, 409 So.2d 893
(Ala. 1982); Mills v. State, 408 So.2d 187
(Ala.Cr.Ap. 1981); McCoy [v. State, 397 So.2d 577
(Ala.Cr.App.), cert. denied, 397 So.2d 589
(Ala. 1981)], supra, Staton v. State, 397 So.2d 227
(Ala.Cr.App.), cert. denied, 397 So.2d 232
(Ala. 1981)."
Furthermore, the evidence must do more than raise a suspicion of guilt and must be inconsistent with the innocence of the accused in order to adequately corroborate accomplice testimony. Harris v. State, 420 So.2d 812 (Ala.Cr.App. 1982). However, this court in Harris v. State, supra, also indicated that the evidence need not be strong or sufficient of itself to support a conviction; rather it must tend to connect the accused with the offense.
 "`Corroborate' means to strengthen, to make stronger; to strengthen, not the proof of any particular fact to which the witness had testified, but to strengthen the probative, criminating force of his testimony. Andrews v. State, 370 So.2d 320
(Ala.Cr.App. 1979), cert. denied, 370 So.2d 323
(Ala. 1979). It is not necessary that such evidence be direct and conclusive; circumstantial evidence from which the guilt of the defendant can be reasonably inferred is sufficient. Merriweather v. State, 364 So.2d 374 (Ala.Cr.App. 1978), cert. denied, 364 So.2d 377 (Ala. 1978). McConnell v. State, 429 So.2d 662, 666 (Ala.Cr.App. 1983). Thus, the weakness of the corroborating evidence, in and of itself, does not preclude a finding that such evidence tends to connect the accused with the commission of the crime. Where such a finding is made, the weakness and inconclusiveness, vel non, of the corroborating evidence is determined by the jury. Palms v. State, 431 So.2d 1373, 1376 (Ala.Cr.App. 1983)."
In the present case, the State submits that corroborative evidence exists in that the appellant was seen prior to the burglary looking for the accomplice; five witnesses testified that it was the appellant's voice which was on the recorded telephone call made to the police and which gave the name Steve Perry and reported a brick being thrown through the window of Cook's business; and, the appellant threatened "to get" Bentis after Bentis pleaded guilty. Although none of the above evidence is sufficient to sustain a conviction in and of itself, its cumulative effect tends to connect the accused with the crime of burglary and, thus, to corroborate the testimony of the accomplice.
 II.
The appellant submits that it was reversible error for the trial court to admit the tape recording made by the police department of the report of the brick being thrown through the window of Cook's business. Specifically, the appellant argues that the State failed to establish a proper predicate for the admission of a sound recording under the guidelines of Voudriev. State, 387 So.2d 248 (Ala.Cr.App.), cert. denied,387 So.2d 256 (Ala. 1980). Under *Page 615 Voudrie, the rules for testing the admissibility of sound recordings have been outlined as follows:
 "`(1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement.' 58 A.L.R.2d at 1027-28." Id. at 256.
The record indicates that the State showed that there was a system at the police station which operated 24 hours a day and made a tape recording of all incoming calls. Carol Stewart, who was working as dispatcher on the night in question, testified that the tape was on and working on that particular evening. The Dothan Police Department's Staff Services Bureau Commander testified that the taping system was run automatically by computer with an automatic fail alert which switches to another system if something goes wrong. He testified that, in this way, this machine is provided with an automatic accuracy check on itself. As to the recorder on which the duplicate tape was made, an investigator with the Houston County Sheriff's Department testified that the recorder is tested each time it is used and that on this occasion, he tested the recorder to make certain that it was working.
The operators in the making of both tapes were competent, as the recording system at the police station is automated and the recorder on which the duplicate was made was operated by the investigator who testified that he had used the recorder daily since January 16, 1984, in his duties as an investigator.
The authenticity and correctness of the original recording was testified to by Carol Stewart, who was a party to the conversation on the tape; she also testified as to the authenticity and correctness of the duplicate recording. Other witnesses who had heard both the original and duplicate recordings testified that they were the same.
The State further submits that there was no alteration of the tape. Carol Stewart testified as to its accuracy in presenting the conversation, and Michael Cedor, who was in charge of records, testified that the sound and L.E.D. readout of the tape machine showed no alteration.
Furthermore, the State showed that the tape was placed in a cabinet in a portion of the communications center to which only Michael Cedor and the senior dispatchers had access. The duplicate tape was kept by Investigator Donald Valenza, who testified that he kept it in his exclusive custody and control.
The speakers were identified; Carol Stewart identified her own voice and five witnesses identified the voice of the appellant.
It is clear that the State satisfied its burden by establishing a proper predicate for the admission of the tape under Voudrie v. State, supra. Therefore, it was within the sound discretion of the trial court to admit the tape recording into evidence. Moulds v. State, 426 So.2d 942 (Ala.Cr.App. 1982).
Furthermore, because this tape was made as part of the police department's ordinary daily business, it was admissible as a business record under § 12-21-43, Code of Alabama (1975), which states:
 "Any writing or record, whether the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of said act, transaction or event if it was made in the regular course of any business and it was the regular course of the business to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal *Page 616 
knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term, `business' shall include a business, profession, occupation and calling of every kind. (Code 1940, T. 7, § 415.)" (See Brooks v. City of Birmingham, 488 So.2d 19, 22 (Ala.Cr.App. 1986), wherein the inner workings of the call-trace equipment were found not to affect the admissibility of the information, but rather to go to the weight which the jury might accord this evidence.)
 III.
The appellant argues that the trial court committed reversible error in admitting the duplicate tape recording into evidence when the State failed to show that there was no break in the chain of custody of the original tape recording. The purpose of establishing a chain of custody is to show reasonable probability that there has been no tampering with the item of evidence. Golden v. State, 439 So.2d 813
(Ala.Cr.App. 1983). The appellant bases his claim on the failure of the State to present the testimony of the individual who put the tape in question into the recording device and then subsequently removed this tape; further, he argues that it is not certain who placed the tape in the cabinet in the communications center, that this cabinet was not kept locked, and that several people could have had access to it. However, the State presented evidence that the cabinet into which the tape was placed was regularly used by the police department for storage of these tapes and that only State's witness Michael Cedor and senior dispatchers had access to that cabinet. Michael Cedor retrieved the tape and made a duplicate with Investigator Valenza present. Valenza then kept the duplicate tape in his control and custody until the trial. Although it is not clear which police officer placed the tape in the cabinet, the chain of custody need not be proved to an absolute certainty, but only to a reasonable probability. Gwin v. State,425 So.2d 500 (Ala.Cr.App. 1982), writ quashed, Ex parte Gwin,425 So.2d 510 (Ala. 1983); White v. State, 384 So.2d 1161
(Ala.Cr.App.), cert. denied, Ex parte White, 384 So.2d 1164
(Ala. 1980). Any conflicts in the testimony concerning the chain of custody of this tape should go to its credibility rather than its admissibility. Lott v. State, 456 So.2d 857
(Ala.Cr.App. 1984). The State has proven this chain of custody to a reasonable probability.
 IV.
The appellant contends that the trial court improperly prevented him from attempting to show bias or interest on the part of an adverse witness. He alleges that the defense counsel should have been allowed to question Ricky Bentis "regarding his prior `contacts' with law enforcement officials in light of the fact that Mr. Bentis testified that he was concerned about probation and said past history with law enforcement officials could affect his chances in getting probation and therefore show Mr. Bentis's bias and personal interest in the outcome of this case." The prior bad acts include an indictment for receiving stolen property, which was nol-prossed, and arrests for harassment made pursuant to domestic problems; neither of these charges involves moral turpitude. Furthermore, had the defense counsel been attempting to impeach Bentis by showing bias through his arrest, imprisonment, or implication in the same criminal act for which the accused is now being tried, the defense counsel's questions concerning the prior criminal act would have been allowed. C. Gamble, McElroy's Alabama Evidence, § 149.01 (8) (3d ed. 1977). Because the defense counsel was seeking to admit evidence of other crimes which did not involve moral turpitude, the trial court properly sustained the State's objection to the appellant's questions. According to C. Gamble,McElroy's Alabama Evidence, § 149.01 (8): "In § 145.01 of this text we observed that a witness may be impeached by showing his prior conviction of a crime involving moral turpitude, but that he may not be impeached by a showing of prior arrest, prosecutions, or accusations that did not result in a conviction. We likewise noted in *Page 617 
§ 140.01 that, when one is attempting to impeach a witness by showing his bad general character as a whole or for truth and veracity, he cannot introduce specific instances of bad conduct."
Moreover, "the subject of cross-examination must be such as `would reasonably give rise to an inference that the witness is biased.' C. Gamble, McElroy's Alabama Evidence §§ 149.01 (9) and (10) (3rd ed. 1977). The fact that a witness has merely been indicted for an offense unrelated to the crime charged against the accused is not such a bias creating fact." Woodwardv. State, 489 So.2d 1 (Ala.Cr.App. 1986).
The fact that a witness has been arrested or indicted for an offense may, however, be a proper subject of cross-examination "if the offenses are factually related or where the particular facts furnish a reasonable inference of interest or bias. Moodyv. State, 495 So.2d 104 (Ala.Cr.App. 1986)." Id. The offenses involved in the present case are clearly not factually related nor do the prior offenses furnish a reasonable inference of interest or bias. To find that such offenses raised an inference of bias because the witness was an accomplice or because he was already convicted, would add a further corroboration requirement to accomplice testimony.
 V.
The appellant alleges that the trial court committed reversible error by not allowing the defense counsel to question a State's witness who testified about another State witness on cross-examination. At trial, the State called Officer Harold Locke to identify the appellant's voice on a tape recording. Later, the State called Judge William McFatter to identify the appellant's voice on the tape recording. The record indicates that the appellant began an initial examination of Locke's credibility during his cross-examination of Judge McFatter, whereupon the State objected to this line of questioning. The court sustained the State's objection, and, on voir dire, it became apparent that the defense counsel sought to introduce evidence of an alleged prior commission of perjury during a trial in which Officer Locke was a witness.
We begin by noting that "`it is an abuse of discretion and a violation of constitutional rights to deny to a defendant the right to cross-examine a witness at all on a "subject matter relevant to the witness's credibility", such as the witness's possible motive for testifying falsely. Davis v. Alaska, [415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974)].'"Moody v. State, 495 So.2d 104 (Ala.Cr.App. 1986), quotingUnited States v. Brown, 546 F.2d 166, 169 (5th Cir. 1977). However, under the present facts, the sole purpose of the testimony of Officer Locke was to identify the voice on the tape as that of the appellant; further, such was the entire subject matter of his testimony. The testimony of Judge McFatter was also introduced for this same purpose and, thus, Officer Locke's testimony was merely cumulative and any error in limiting the appellant's right of cross-examination was harmless. Payne v. State, 487 So.2d 256 (Ala.Cr.App. 1986);Romine v. State, 384 So.2d 1185 (Ala.Cr.App.), cert. denied, Exparte Romine, 384 So.2d 1188 (Ala. 1980).
 VI.
The appellant contends that the trial court erred in allowing into evidence two State's exhibits, since the State had failed to produce said documents prior to trial, in violation of the court's discovery order and Alabama Temporary Rules of CriminalProcedure, Rule 18.3. One of the exhibits in question was a complaint/dispatch card which repeats the information that is on the tape of the call that came in to the Dothan Police Department; a dispatcher regularly fills out such a card concerning the conversation every time she takes a call. The second exhibit was a special services report, which is a record that indicates that a call was made to Mr. Cook informing him of the report that the window at his business had been broken. The defendant's motion for discovery was granted by the trial court; it requested that the State disclose, for inspection and *Page 618 
copying, any papers, documents, photographs, or other tangible objects which were in the possession, custody or control of the State and which were intended for use by the State at trial. Because such a request is general in nature, even had the evidence been exculpatory, the conviction could not be reversed unless the evidence proved to be material to the issue of guilt or innocence of the appellant. United States v. Agurs,427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). See also UnitedStates v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481
(1985). Under the rule in Agurs, the proper standard of materiality is determined as follows:
 "[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."
United States v. Agurs, 427 U.S. 97 at 112-13, 96 S.Ct. 2392
at 2402, 49 L.Ed.2d 342 (1976).
These two exhibits did not create a reasonable doubt that did not otherwise exist and neither were they exculpatory; rather, they were duplicative of other evidence.
 VII.
The appellant claims that a sentence of 30 years is so disproportionate to the crime committed that it violates his rights under the Eighth Amendment to the United States Constitution. The appellant was convicted of burglary in the third degree, which is a Class C felony pursuant to Code ofAlabama (1975), § 13A-7-7. The record reflects that the appellant was properly sentenced pursuant to the Habitual Offender Act, which has consistently been held to be constitutional. See Carroll v. State, 445 So.2d 952
(Ala.Cr.App. 1983); Jemison v. State, 439 So.2d 786
(Ala.Cr.App. 1983). Because the appellant was sentenced under this statute, the language of § 13A-5-9 (c)(1), Code of Alabama
(1975), applies: "On conviction of a Class C felony, he must be punished by imprisonment for life or for any term not more than 99 years but not less than 15 years." Thus the appellant's sentence clearly fell within the statutory limit applicable to his case and this court has no authority to review this sentence. German v. State, [Ms. 1 Div. 205, September 9, 1986] (Ala.Cr.App. 1986); Clemmons v. State, 469 So.2d 1324
(Ala.Cr.App.) cert. denied, ___ U.S. ___, 106 S.Ct. 114,88 L.Ed.2d 94 (1985).
AFFIRMED.
All the Judges concur.