Appellant was indicted by the July 1978 Jefferson County Grand Jury for first degree arson. He was brought to trial before a jury on July 30, 1979. After testimony began, but before the jury retired, it became apparent that a possible variance existed between the indictment as drawn and the State's evidence. The appellant moved to exclude the State's evidence based upon this assumption of variance. The State's request for a voluntary amendment to the indictment was refused by the appellant, whereupon the court dismissed the prosecution and ordered that another indictment be prepared. Appellant was subsequently indicted by the September 1979 Jefferson County Grand Jury for arson with intent to defraud an insurance company. After entering a plea of not guilty at arraignment, *Page 188 
appellant entered a plea of former jeopardy. Appellant's plea was denied and he was tried before a jury and found guilty. The trial court sentenced appellant to three years' imprisonment to be served by six months' imprisonment and thirty months' probation. This appeal followed.
The appellant's brief contains a thorough and accurate presentation of the voluminous trial testimony and was adopted by the State in its brief as its own. This opinion therefore relies substantially on appellant's brief in its statement of facts.
The State's primary witness, Kenneth M. "Pete" Thomas, testified he went to appellant's office in the Life and Casualty Building on 6th Avenue South in Birmingham, Alabama in January of 1978, where appellant told him he knew a man who would pay $1000 to have his house burned. Thomas would not perform the service for that amount, so appellant gave Thomas a telephone number of a man named Tom to call, in order to make his own arrangements. Appellant wanted $500 for the phone number. Thomas took the number, left appellant's office, went to a phone booth and called Tom. He quoted a price of $2500 to Tom, who told Thomas to call him back in a couple of days. Thomas called again on Thursday at which time Tom agreed to the $2500 fee. Thomas told Tom to have a key made and leave it at appellant's office for Thomas to pick up and also to have half the money ready Friday night.
On Thursday, Thomas talked to Ross Donahue and James Edward Miller and offered them $750 each to burn the house. On Thursday afternoon, Thomas drove to appellant's office in his automobile, accompanied by Cecil Foote, Miller, and Donahue. Thomas went into appellant's office and a secretary gave him a white envelope containing the key, while the other three men waited in the vehicle. After returning to the automobile, Thomas opened the envelope and removed the key in the presence of the other men.
Thomas left Miller and Donahue at 6:30 or 6:45 on Friday and drove to the Golden Rule Bar-B-Que in Irondale. Tom McCoy, the owner of the house to be burned, arrived between 7:00 and 7:05 p.m. McCoy said he did not have the money, but he would guarantee it for Monday. Thomas told McCoy he did not know if the other men would do the job without the money. This prompted McCoy to place a telephone call from the Golden Rule, after which Thomas took the receiver and spoke with a voice he recognized as that of appellant, who told Thomas the money was guaranteed and to go ahead with the deal. McCoy then gave Thomas directions to his house in Leeds, Alabama. Thomas left and returned to Donahue and Miller and explained the situation to them.
Later that evening the three men rode by McCoy's house and observed McCoy, a woman and child getting into an automobile. The three men then returned to the house of Thomas's ex-wife and remained there until 11:30 p.m. They then left and purchased gasoline which they pumped into a five gallon can and two plastic jugs. Thomas drove to a point near McCoy's house and parked. Miller and Donahue then walked toward McCoy's house with the key and gasoline. Ten minutes later they returned to the automobile with the can and jugs. Thomas drove to Highway 78 where he threw away the key and can, then returned to see that the house was burning.
Monday afternoon following the fire on early Saturday morning, Thomas called appellant from a phone booth, and then went to appellant's office. Appellant gave Thomas $2500 in cash. Thomas paid appellant $750 and then left and paid Miller and Donahue $500. Three weeks later Thomas was arrested by the Mountain Brook police. Officer Don Isaacs photocopied an address book belonging to Thomas, which Thomas identified at trial. Thomas later threw the original book away.
Cecil Foote testified he rode with Thomas, Miller and Donahue to the Life and Casualty building on Sixth Avenue next to Carlile's Bar-B-Que in Birmingham in January of 1978. Thomas got out of the automobile and went toward the building while the other three men remained in the vehicle. *Page 189 
Some fifteen minutes later Thomas returned, got into the automobile, said "here it is," and placed a key in his shirt pocket. They drove away and Foote left the automobile a short while later.
Mark Lawley, a Leeds firefighter, and the first to arrive at the McCoy house fire on January 28, 1978, shortly after 2:00 a.m., found the front door unlocked. He stated the response of the fire to water sprayed upon it was consistent with that of a fire of gasoline origin.
Ross Donahue testified he accompanied Thomas and Miller to an insurance company on 36th Street and Seventh Avenue. Thomas got out of the vehicle and returned after ten minutes. Donahue did not recall Thomas having anything in his hands when he returned to the vehicle. He stated that later that day they went to Miller's and got a five gallon can. They got two more cans from Annette Wells's house, and then proceeded to drink and drive around the remainder of the day. Later, Thomas left Miller and Donahue at an omelet shop and returned thirty minutes later saying he "didn't get no money." They again returned to Annette Wells's house and continued to drink until 11:30 p.m., after which they went to Leeds. Thomas parked the automobile and Donahue and Miller walked to the McCoy house. The two men used a key to enter through the front door, and then doused the house with seven gallons of gas. They ignited the gasoline and ran back to the automobile. The three then drove out toward Rose Hill and threw away the key and two cans. They returned to the scene to see that the house was burning, and then left. The following Monday Donahue and Miller both received $250 from Thomas.
Kirk Langston, a handyman working for Thomas McCoy, stated he removed furniture, equipment, and automobiles from McCoy's house at McCoy's request the day before the house burned.
Don Issacs, a Mountain Brook police officer, arrested Thomas on February 17, 1978, at which time he photocopied pieces of paper from Thomas's billfold containing phone numbers. He also identified the photocopy of Thomas's note book, which was then admitted into evidence.
Richard Serviss, a State Farm claims representative, testified the McCoy house was insured by State Farm and that McCoy had filed a proof of loss claim. Serviss's opinion, after having examined the house remains numerous times, was that the fire originated from a flammable liquid.
After an extended discussion, the court allowed into evidence a Tennessee birth certificate certifying the birth of Raymond L. Mills, appellant, to Annie Mae Glasful and William L. Mills in Nashville, Tennessee.
Glenora Winn, a South Central Bell employee in Nashville, Tennessee, testified as custodian of records that Nashville telephone number 615-292-6385 was the number of W.L. and Annie Mae Mills, and that their records reflected the following phone calls for that number.
1-26-78 7:43 p.m. To 205-699-7810 5 minutes
1-27-78 6:02 p.m. To 205-699-7810 1 minute
1-27-78 6:14 p.m. To 205-699-7459 6 minutes
E.J. Samples, Leeds Telephone Company's Commercial Manager, stated Thomas McCoy's home phone number was 699-7810, and that Motion Enterprises number 699-7459, was listed at the same address. His records reflected the following calls for number 699-7459
1-26-78 5:14 p.m. To 615-292-6385 3 minutes
1-26-78 6:23 p.m. To 615-292-6385 5 minutes
1-27-78 10:34 a.m. To 615-292-6385 4 minutes
1-27-78 3:01 p.m. To 205-553-1231 4 minutes *Page 190 
1-27-78 4:04 p.m. To 615-292-6385 1 minute
1-25-78 7:25 p.m. To 615-832-8091 7 minutes
George A. Davis, South Central Bell Business Office Manager in Birmingham, testified telephone number 923-0939 was the number of Barbara C. Miller and 956-9891 was the number of the Golden Rule Bar-B-Que. Diane Doyle, identified by Thomas as his daughter, was assigned the telephone number 780-5124. Mr. Davis's records indicated the following calls were charged to 780-5124:
FM 956-9891 1-27-78 6:54 p.m. To 615-292-6385 4 minutes
FM 923-0939 1-28-78 2:43 p.m. To 615-292-6385 1 minute
Ken Sanders, a loan officer with Central Bank, testified the McCoy's had a second mortgage loan for $25,000 which was two months past due as of January 28, 1978.
George Townsend, custodian of records for Birmingham Federal Savings and Loan, stated Birmingham Federal held a $55,000. first mortgage on the McCoy residence which was two months past due on January 28, 1978.
Grover Dunn, a chemical engineer, testified the results of scientific tests on samples from the burned McCoy house indicated the fire was a gasoline fire.
Wendell Stewart, district sales manager of Life and Casualty Company of Tennessee, testified appellant worked in the company office at 3601 Sixth Avenue South in Birmingham in January of 1978.
The State rested at the close of Mr. Stewart's testimony. Appellant's motion to exclude the State evidence for failure to make out a prima facie case was denied by the trial court.
Brenda Hasty and Paulette Mewborne, testifying for the defense, stated they were the only two secretaries employed in appellant's office in January of 1978 and neither one recalled giving Thomas an envelope or key.
Raymond Mills, testifying on his own behalf, stated he knew both McCoy and Thomas. He was in Nashville, Tennessee from Wednesday through the Saturday the fire occurred. He had talked to McCoy from the Nashville phone during this time, but the conversations pertained to a joint venture on building speculative housing in Moody, Alabama.
Willie Mae Long, a resident of Nashville, Tennessee, and friend of appellant, testified appellant and his wife were at her house the Friday night and Saturday morning of the weekend the fire occurred.
Walker Norris, a Birmingham area attorney testified the appellant called him at home on Saturday afternoon from Nashville, Tennessee.
After calling rebuttal witnesses, the State rested, followed by the defense.
 I
The immediate case closely parallels the companion case ofMcCoy v. State, Ala.Cr.App., 397 So.2d 577, cert. denied, Ala.,397 So.2d 589 (1981), and our decision herein is based upon the identical reasoning which mandated reversal in McCoy.
At the close of the State's case, the appellant moved to exclude the State's evidence based upon the State's failure to produce evidence sufficiently corroborative of the accomplice's testimony. After a lengthy hearing, the trial court overruled appellant's motion. While our review of the correctness of a trial court's determination of a motion to exclude the evidence may only consider that evidence already before the court at the time the motion is made, we must yet consider that evidence in the light most favorable to the State's case. Frye v. State, Ala.Cr.App., 369 So.2d 892 (1979); Kent v. State, Ala.Cr.App.,367 So.2d 508 (1978), cert. denied, Ala., 367 So.2d 518 (1979).
The method used in determining the sufficiency of evidence corroborative of accomplice *Page 191 
testimony is that of a "subtracting process." McCoy, supra. The rule governing the determination of sufficiency is codified in Alabama Code 1975, Section 12-21-222 as follows:
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
The formula applying the rule requires that evidence of the accomplice must first be "subtracted" and then, if upon the review of all other evidence before the court at the time of the motion, there is found to be sufficient incriminating evidence which would tend to connect the defendant with the commission of the offense, sufficient corroboration exists.Craig v. State, Ala.Cr.App., 376 So.2d 803; Ala., 376 So.2d 807
(1979); Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973). However, the corroborative evidence need not refer to any statement or fact testified to by the accomplice. Neither must it be strong nor sufficient of itself to support a conviction. The probative value of the evidence need only legitimately tend to connect the accused with the crime and need not directly do so. Further, corroborative evidence need not directly confirm any particular fact nor affirm each and every material fact testified to by the accomplice. Corroboration may be proven by circumstantial evidence alone. Craig, supra.
The State at trial relied on the following six points of evidence as being sufficiently corroborative of the accomplice testimony of Thomas and Donahue to sustain the trial court's ruling: (1) The notebook found in Thomas's billfold and the contents thereof, including the names and telephone numbers of McCoy, appellant, Barbara Miller, and Thomas's ex-wife, Joyce; (2) The testimony of Cecil Foote concerning a key he observed in Thomas's possession; (3) McCoy's financial condition as his motive for having his house burned; (4) McCoy's action in having certain valuable or uninsured items removed from his home on the Friday preceding the fire; (5) Circumstantial evidence of telephone calls made to and from various involved parties, including those to the appellant in Nashville; (6) The lack of evidence of other telephone calls between McCoy and the appellant in Nashville, other than during the period during which the fire occurred.
Thomas's personal memoranda and notebook containing the telephone numbers of appellant, McCoy, Barbara Miller, and Joyce Thomas cannot be used as corroborative evidence of Thomas's testimony. The notebook was not shown to contain writings made by the appellant. Rather the memoranda were shown to have been prepared by the accomplice, Thomas, himself. Because an accomplice may not corroborate himself, real evidence, such as the written phone numbers herein, may not be used to corroborate an accomplice's testimony where the only testimony authenticating that evidence is that of the accomplice. McCoy, supra.
The testimony of Cecil Foote is proffered by the State as corroborative evidence of Thomas's testimony concerning the receipt of a key to McCoy's home from the appellant's secretary. Foote, however, did not actually observe Thomas receive the key, nor did he have any knowledge, either independently or through Thomas, of the key's origin or its intended or actual use. All Foote was able to testify to was that Thomas had a key when he returned to the automobile from the direction of the Life and Casualty Building, that Thomas stated "here it is," and then put the key into his pocket. Foote's testimony, taken alone and without the aid of Thomas's testimony, tends in no way to link appellant with the offense. There is nothing in Foote's testimony standing alone to connect the appellant with the preparation, receipt, or use of the key by Thomas.
 "The tendency of the corroborative evidence to connect accused with the crime, or with the commission thereof, must be independent, and without the aid, of any testimony of the accomplice; the *Page 192 
corroborative evidence may not depend for its weight and probative value on the testimony of the accomplice, and it is insufficient if it tends to connect accused with the offense only when given direction or interpreted by, and read in conjunction with, the testimony of the accomplice." 23 C.J.S. Criminal Law, Section 812 (b) (1961).
McCoy's financial condition does tend to show a motive for McCoy having his residence burned. But McCoy's motive alone does not satisfy the requirement for corroboration of accomplice testimony. McCoy, supra. Further, though it may tend to connect McCoy with the crime it in no way tends to independently connect the appellant with the crime as the law requires. The same is true for evidence concerning the removal of items by McCoy from his residence. While that evidence may cast some suspicion on McCoy, it has no probative value tending to connect the appellant with the crime.
The circumstantial evidence of telephone calls, or the lack thereof, among the various parties during the time period of the fire does tend to corroborate factual details of Donahue and Thomas's testimony. However, this evidence fails to meet the statutory requirement of corroboration because it does not tend to connect the appellant with the crime when considered independently of accomplice testimony. While the telephone calls do tend to link the appellant with McCoy, Thomas, and the other accomplices, they do not independently connect the appellant with the commission of the crime. Without the testimony of one of the accomplices explaining the nature and content of the calls, the calls have no probative value tending to connect the appellant with the crime itself. McCoy, supra.
In short, there is no item of evidence, standing alone and apart from the accomplice's testimony explaining that evidence, which tends to connect the appellant with the crime. The key, the telephone calls, McCoy's motive — none of these have any meaning or explanation in the absence of testimony from an accomplice to the crime. The evidence presented in the instant case does no more than to create a strong suspicion of guilt, while failing to produce independent facts which tend to connect the appellant with the commission of the offense.McCoy, supra. Sorrell v. State, 249 Ala. 292, 31 So.2d 82
(1947).
The defendant's motion to exclude the State's evidence should have been granted by the trial court. Because a second trial is barred by the double jeopardy clause of the Constitution, we pretermit discussion of other issues raised in appellant's brief. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141,57 L.Ed.2d 1 (1978). The judgment is reversed and judgment is here rendered dismissing appellant from further proceedings in this cause.
REVERSED AND RENDERED.
All the Judges concur.