Keith Thomas Inmin, the appellant, was convicted of theft of property in the first degree, was sentenced to five years' imprisonment, *Page 88 
was fined $500, and was ordered to pay restitution in the amount of $70,000.
After his conviction, the appellant obtained new counsel, who filed a motion for a new trial, alleging that trial counsel had been ineffective. Following a hearing, the circuit court denied the motion. On this direct appeal of his conviction, the appellant raises five issues relating to the ineffectiveness of trial counsel.
 A.
First, the appellant claims that his trial counsel was ineffective because he did not move to quash the indictment on the ground that the grand jury foreman was selected in a racially discriminatory manner.
Appellate counsel's amended motion for a new trial alleged that the indictment against the appellant was constitutionally defective because
 "upon information and belief, African-Americans, women, young adults and other cognizable groups are systematically and discriminatorily excluded from serving as Grand Jury forepersons in Houston County.
". . . .
 "[H]ad the trial attorney filed a motion, based on Lee v. State, [631 So.2d 1059 (Ala.Cr.App. 1993),] and Locke v. State, [631 So.2d 1062
(Ala.Cr.App. 1993),] to dismiss the indictment based on discrimination in selection of the foreperson, the indictment against the defendant would have been dismissed and therefore the outcome of the case would have been changed, meeting the test under Strickland v. Washington, [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)]." Supp.C.R. 15-16.
Lee v. State, and Locke v. State, held that the selection process of grand jury forepersons in Monroe County had been racially discriminatory. We fail to see how those decisions can serve as authority for the factual proposition that the grand jury foreperson of Houston County was selected in a discriminatory manner, or that counsel was ineffective for failing to challenge the indictment against the appellant on that ground.
During the hearing on his motion for a new trial, the appellant offered no evidence that the process of selecting the grand jury foreperson in Houston County was racially discriminatory. Here, as in Sistrunk v. State, 630 So.2d 147,153 (Ala.Cr.App. 1993), the appellant simply failed to adduce any facts to support his allegation of a constitutional violation.
On appeal, the appellant has attached to his brief an addendum, which purports to be an order dated June 7, 1994, by Circuit Judge Michael Crespi finding, in an unrelated case, "systematic under-representation of black people" as forepersons of Houston County grand juries. "Exhibit A" to Brief of the Appellant. There is nothing in the record to indicate that the circuit judge who conducted the June 28, 1994, hearing on the appellant's motion for a new trial was asked to, or did, take judicial notice of the June 7 order. As we observed under the same circumstances in Huff v. State,596 So.2d 16, 19 (Ala.Cr.App. 1991), "attachments to briefs are not considered part of the record and therefore cannot be considered on appeal." "Allegations in appellant's brief reciting matters not disclosed in the record cannot be considered." Moon v. State, 580 So.2d 87, 88 (Ala.Cr.App. 1991).
Moreover, even if Judge Crespi's order had been admitted at the hearing on the motion for a new trial, that document — dated June 7, 1994 — would not have established that trial counsel was ineffective for failing to challenge the indictment in this case. The appellant was indicted on April 6, 1993, and tried on February 2, 1994, four months before Judge Crespi's order. Counsel cannot be held ineffective for failing to predict the future course of the law. State v. Tarver,629 So.2d 14, 18-19 (Ala.Cr.App. 1993); Duren v. State,590 So.2d 360, 365 (Ala.Cr.App. 1990), aff'd, 590 So.2d 369 (Ala. 1991), cert. denied, 503 U.S. 974, 112 S.Ct. 1594, 118 L.Ed.2d 310
(1992); James v. State, 564 So.2d 1002, 1005-06 (Ala.Cr.App. 1989); Morrison v. State, 551 So.2d 435, 439 (Ala.Cr.App. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938,109 L.Ed.2d 301 (1990). *Page 89 
The appellant has failed to prove that his counsel was ineffective on the first ground alleged.
 B.
The appellant contends that counsel was ineffective because he did not object to the following portions of the court's oral charge:
 1. "The Court charges you, the jury, that after considering the evidence tending to show guilt together with that tending to show innocence, it would spring up voluntarily in your minds from any part of the evidence a probability of the innocence of the Defendant, then you must find the Defendant not guilty." R. 157 (emphasis added).
 2. "The Court charges you, the jury, that the humane provision of the law is that there should not be a conviction upon the evidence unless, to a moral certainty, it excludes every other reasonable hypothesis than that of the guilt of the accused." R. 157 (emphasis added).
The phrase in the first charge concerning whether the probability of innocence should "spring up voluntarily" in the minds of the jurors is flawed. The approved form of the instruction is that the probability should "spring upin voluntarily." See Wilson v. State, 243 Ala. 1, 18,8 So.2d 422, 438 (1942); Smith v. State, 182 Ala. 38, 40, 50,62 So. 184, 186, 188 (1913); Funches v. State, 53 Ala. App. 330,337-38, 299 So.2d 771, 777-78, cert. denied, 293 Ala. 752,299 So.2d 778 (1974), cert. denied, 419 U.S. 1114, 95 S.Ct. 793,42 L.Ed.2d 813 (1975). Nevertheless, this Court has stated:
 "[T]he fact that isolated instructions are erroneous or misleading is no ground for reversal where the instructions as a whole present the case properly. Johnson v. State, 81 Ala. 54, 1 So. 573
(1886). Where a portion of the oral charge is erroneous or misleading, the whole charge may be looked to, and the entire charge must be construed together to see if there be reversible error. Harris v. State, 412 So.2d 1278, 1281
(Ala.Crim.App. 1982)."
Self v. State, 620 So.2d 110, 114 (Ala.Cr.App. 1992). The remainder of the complained of instruction was correct and the court's oral charge on the presumption of innocence, the State's burden of proof, and the meaning of "reasonable doubt," was clear, thorough, and correct. "[T]aken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury." Holland v. United States, 348 U.S. 121, 140,75 S.Ct. 127, 138, 99 L.Ed. 150 (1954), quoted in Victor v.Nebraska, ___ U.S. ___, ___, 114 S.Ct. 1239, 1243,127 L.Ed.2d 583 (1994).
The second charge quoted above was not rendered objectionable because it contained the phrase "to a moral certainty." InVictor v. Nebraska, the Supreme Court "accept[ed] . . . [the] premise that 'moral certainty,' standing alone, might not be recognized by modern jurors as a synonym for 'proof beyond a reasonable doubt." ___ U.S. at ___, 114 S.Ct. at 1247. However, the Court determined that when the phrase "moral certainty" was used in conjunction with other language explanatory of the standard of proof required to convict, it was not unconstitutional.
 "[T]he moral certainty language cannot be sequestered from its surroundings. In the Cage [v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990),] instruction, the jurors were simply told that they had to be morally certain of the defendant's guilt; there was nothing else in the instruction to lend meaning to the phrase. Not so here. The jury . . . was told that a reasonable doubt is 'that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.' The instruction thus explicitly told the jurors that their conclusion had to be based on the evidence in the case."
Victor v. Nebraska, ___ U.S. at ___, 114 S.Ct. at 1248
(emphasis in original) (citation omitted). Likewise, the oral charge in the present case informed the jury that its verdict had to be based on the evidence. The jury was instructed not to convict unless the evidence "to a moral certainty . . . excludes every other reasonable hypothesis than that *Page 90 
of the guilt of the accused." Counsel was not ineffective for failing to object to the circuit court's oral charge.
 C.
The appellant argues that trial counsel's failure to object to what he calls in his brief "an inordinate amount of hearsay evidence" constitutes ineffectiveness. Brief of the Appellant at 22. The appellant complains of three instances in which witnesses testified to what they had been told by the victim, Cecil Henderson, or by neighbors of the victim.
Cecil Henderson testified that his niece and her husband, the appellant, came to visit him for several days. After they left, Henderson discovered that $70,000 was missing from an old trunk in which he kept his money.
The appellant maintains that his lawyer's failure to object to the following testimony was ineffective: a witness's statement that Cecil Henderson had said that he kept a large amount of money in an old trunk in his house, R. 112; a witness's testimony that Cecil Henderson had said that the appellant had been at Henderson's house immediately before Henderson discovered the money was missing, R. 114; and a witness's statement that Henderson's neighbors had said that the appellant had been driving a tan Lincoln Town Car, R. 116.
To prevail on an ineffectiveness of counsel claim, the appellant must establish both that his counsel's performance was deficient and that he was prejudiced as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668,687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). We need not determine whether the questioned testimony was hearsay or whether counsel erred by failing to object to it, because "there is [no] reasonable probability that, but for counsel's [assumed] errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. All of the alleged hearsay evidence was already before the jury in the form of admissible testimony elicited from Cecil Henderson himself. Therefore, the challenged testimony was cumulative; without it, the result of the proceeding would not have been different. See Spurgeon v. State, 560 So.2d 1116, 1121
(Ala.Cr.App. 1989).
The appellant also complains that counsel failed to object on hearsay grounds to testimony that the appellant's wife asked the victim's former daughter-in-law "Do you know if Cecil [Henderson] keeps money?" R. 102.
"The hearsay rule forbids merely the use of an extrajudicial utterance as an assertion to evidence the fact asserted."Nicholson v. State, 369 So.2d 304, 308 (Ala.Cr.App. 1979) (emphasis added). The question asked by the appellant's wife was not, on its face, an "assertion." It was not a statement of fact; it was an inquiry.
We need not decide whether a question can ever qualify as an "assertion" for purposes of the hearsay rule. We hold only that the particular out-of-court utterance here was not offered as an assertion and was not offered as an assertion and was not hearsay. See Tillis v. State, 469 So.2d 1367, 1370 (Ala.Cr.App. 1985). Counsel was not ineffective for failing to object to the testimony on hearsay grounds.
 D.
The appellant maintains that his lawyer was ineffective because he did not move for a mistrial when the trial court made an allegedly improper comment suggesting an answer to a witness.
At the time of trial, Cecil Henderson was ninety years old. During the direct examination of Mr. Henderson by the district attorney, the appellant's wife, Rose Inmin, was brought into the courtroom. The prosecutor continued his examination of Mr. Henderson as follows:
 "Q. Do you see this lady right over here I am pointing to? Can you see her?
"A. Yeah.
"Q. What color is her hair?
 "A. Well, looks like it's been dyed, but I reckon it's natural color.
 "Q. Let me ask you this. Do you recognize that face on that lady? *Page 91 
"A. Yeah.
"Q. Who is that lady?
"A. It ain't her.
"Q. That's not Rose?
"A. Huh-uh.
"Q. Are you sure?
"A. Her mouth don't look right.
 "Q. Can you tell the jury, Mr. Henderson, what color Rose's hair was when she came to your house on February the 18th, 1993? Do you remember?
"A. Yeah.
"Q. What color?
"A. Solid white
"Q. Solid white. You are sure?
"A. I knowed it was.
 "[DISTRICT ATTORNEY]: Let the record reflect that the lady I asked to come in does not have white hair.
". . . .
 "[DISTRICT ATTORNEY]: Judge, I ask that the woman I asked to be brought in[to] the courtroom to come closer to him to see. I don't believe he can see.
 "THE COURT: All right. Mrs. Inmin, could you come around a little closer.
". . . .
 "[DEFENSE COUNSEL]: Judge, I'd like to object to this method of identification of people. The District Attorney is being extremely suggestive of whom he wishes the witness to identify. And I would just like to enter a continuing objection to this type of questioning, this type of identification. It's not fair." R. 54-55, 57 (emphasis added).
Following the above occurrence, the woman approached the bench and Cecil Henderson identified her as his niece, Rose. The appellant claims that his lawyer was ineffective because he did not move for a mistrial after the emphasized comment by the trial judge.
"[A] mistrial is a drastic remedy, to be used only sparingly and only to prevent manifest injustice, and . . . the decision of whether to grant a motion for a mistrial rests within the sound discretion of the trial court." Ex parte Thomas,625 So.2d 1156, 1157 (Ala. 1993) (citation omitted). Here, a mistrial was not warranted because it was undisputed that the appellant and his wife Rose were in the victim's house on the date of the alleged offense. The only disputed fact was whether the appellant stole the victim's money. Therefore, the identity of Rose Inmin was not really in question and the suggestive identification procedure did not materially harm the appellant. Moreover, "the appellant failed to prove that the trial judge would have granted a motion for mistrial, thus making the outcome different." Smelley v. State, 564 So.2d 74, 86
(Ala.Cr.App.), cert. denied, 564 So.2d 89 (Ala. 1990).
 E.
The appellant contends that his counsel was ineffective because he failed to request a hearing to determine Cecil Henderson's competence to testify.
Citing Mr. Henderson's advanced age, as well as his confusing and conflicting testimony, the appellant maintains that Henderson was senile and that trial counsel should have challenged Henderson's ability to testify.
The party challenging a witness's competence to testify bears the burden of proving incompetence. Here, the appellant introduced no evidence tending to show that Henderson was incompetent. As we observed in Taylor v. State, 408 So.2d 551,554 (Ala.Cr.App. 1981), cert. denied, 408 So.2d 555 (Ala. 1982), "[D]iscrepancies in the testimony of a particular witness go to the credibility of that witness rather than his or her competency." The appellant has failed to prove that if his counsel had challenged Henderson's competence as a witness, the result of the proceeding would have been different. SeeStrickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 92