PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS *Page 852 
Teresa Lynn Hunt was convicted of forgery in the second degree, a violation of § 13A-9-3, Ala. Code 1975. The trial court sentenced her as a habitual offender to 15 years' imprisonment; it ordered that her sentence be split and served as one year of incarceration, with the remainder of 14 years suspended for two years of probation after completing the one-year sentence. The Court of Criminal Appeals, on May 8, 1998, affirmed her conviction by an unpublished memorandum. Hunt v. State, (No. CR-96-1769)738 So.2d 934 (Ala.Crim.App. 1998) (table). We granted Hunt's petition for certiorari review. We reverse the judgment of the Court of Criminal Appeals and render a judgment of acquittal.[1]
The evidence at trial tended to show the following: On or about October 30, 1995, a burglary occurred at a business known as Rose Rentals in Lauderdale County. The burglars took approximately $40,000 in merchandise. The burglars also took check number 14128, which was blank, from Rose Rentals' checkbook. The State charged Hunt with forging check 14128 by making it payable to Tim Horton, a friend of hers, in the amount of $247.53 and by forging the drawer's signature as "Jim Sak." At Hunt's trial, the State presented evidence indicating that the check was cashed on November 3, 1995, at John's Shop Ezy store in Florence. The State also presented the testimony of James Sak. Sak testified that he was in charge of Rose Rentals' payroll and its personnel checks in November 1995, and that it was his signature that would have appeared on every one of Rose Rentals' payroll checks issued in that month. He testified that he signed all Rose Rentals checks as "James R. Sak," and not "Jim Sak." He stated that although the name "Jim Sak" appeared on the signature line of check 14128, that signature was not his and that he did not authorize Hunt or Horton to cash the check. He also stated that he did not know whether Hunt was involved in the forgery.
Next, the State called Dale Olive, an employee of Rose Rentals, to the stand. He testified that just a few days before the check was cashed he received a suspicious telephone call while at work. Then, the following occurred:
 "Q. Will you tell the ladies and gentlemen of the jury the nature of that phone call and what if anything was said?
"[DEFENSE COUNSEL]: Objection, Your Honor, hearsay.
"THE COURT: Come up.
"(At this time a bench conference was held.)
 "THE COURT: Overruled. You may answer. Do you need the question repeated?
"THE WITNESS: No, sir.
". . . .
 "A. . . . I received a phone call, there was a female voice on the other end. She asked who signed the payroll checks, who made the payroll checks out and I told her Mr. Sak. And she said what was his first name and I *Page 853 
said `Jim Sak.' And at that point she just hung up.
 "Q. You cannot identify the person on the other end of that phone conversation?
"A. No, ma'am."
(R. 56-57.)
The State then called Tim Horton to the stand. Horton said that he had been indicted for the same offense as Hunt but that he had received leniency for testifying against Hunt. He testified that he was living with Hunt and her boyfriend, Timmy Dale Brewer, at the time of the crime. He said that he saw Hunt make a telephone call from their home to Rose Rentals and that Hunt told him that Jim Sak was the person who signed Rose Rentals' checks. He testified that Hunt then filled out check 14128 from Rose Rentals and that when she did she wrote the check to his order, in the amount of $247.53. He said that he cashed the check 30 to 45 minutes later at John's Shop Ezy.
The State's last witness was Officer Barry Brewer from the Florence Police Department. Officer Brewer investigated the burglary and the forgery of the stolen check. He testified that Hunt gave him several handwriting samples, which he said he submitted to the Department of Forensic Sciences for testing. During his testimony, the State entered into evidence, without objection, a report from the Department of Forensic Sciences. This report stated, in pertinent part:
 "Laboratory examinations and comparisons revealed indications that the questioned entries on [check 14128] may have been written by the author of the Teresa L. Hunt handwriting standards. There are indications that the `Jim Sak' maker's signature may not represent the natural handwriting of the writer.
 "Comparisons of the endorsement on [check 14128] with the submitted standards were inconclusive. Examination of the handwriting characteristics comprising the endorsement revealed indications that this handwriting may not represent the natural handwriting of the writer."
The State then rested its case, and the trial court excused the jury.
At that time, Hunt's counsel moved for a judgment of acquittal and moved to exclude Horton's testimony, on the basis that under § 12-21-222, Ala. Code 1975, a felony conviction cannot be had on the testimony of an accomplice, unless that evidence is corroborated by other evidence tending to connect the defendant to the crime. Hunt's counsel asked the trial court to hold that, as a matter of law, Horton was an accomplice. Hunt's counsel argued that under Alabama caselaw the trial court was required to subtract Horton's testimony from the sum of the evidence and then to determine whether the State had presented any evidence tending to link Hunt to the crime. Hunt's counsel contended that the testimony regarding the telephone call by a person with a female voice was insufficient to link Hunt to the crime and, therefore, that Hunt was entitled to a judgment of acquittal.
The trial court then questioned Hunt's counsel:
 "THE COURT: Following your line of reasoning, Mr. Rushing, what about the forensic sciences [report] that said it might have been her signature? What would be your response to [the report that] it might have been her handwriting?
 "[DEFENSE COUNSEL]: I would say the report also said it may not represent the natural handwriting of the writer and the endorsement, it says, may not represent the natural handwriting of the writer. I would say that a report —
"THE COURT: May or may not.
 "[DEFENSE COUNSEL]: — may or may not, it's very inconclusive and would not be enough evidence in and of itself.
 "THE COURT: And again, I don't know that that would be determinative *Page 854 
for or against the defendant or the State. I was just curious what your reaction would be if it narrowed down to that being the link [that provided the corroboration] — if that was the State's only shot. Excuse me, I didn't mean to interrupt.
 "[DEFENSE COUNSEL]: That's all right. There's several other cases that have held that if the evidence merely raises a conjecture, surmise, speculation or suspicion then that would not be considered corroboration and I would make that motion at this time, Your Honor."
The trial court then denied the motion for a judgment of acquittal.
After the court held a hearing on a motion in limine made by Hunt, the jury returned, and Hunt began her case-in-chief. She called only one witness, her boyfriend, Timmy Brewer. Brewer testified that he was living with Hunt during October and November 1995 and that Horton lived with them "off and on" during that time. Contrary to Horton's testimony, however, Brewer said that Hunt took no part in the crime. According to Brewer, Horton was the person who made the telephone call to Rose Rentals to get the name of the payroll clerk. Brewer testified that he filled out the "top part" of the check, meaning the name of the payee and the amount, and that Horton signed the name "Jim Sak" on the signature line. Brewer said that he understood that, by his testimony, he was confessing to a crime and that he might be required to serve additional jail time (he was already serving a sentence of life imprisonment based on convictions of several other crimes; this fact apparently explains why he was not prosecuted as an accomplice) or to pay restitution for his participation in the crime.
The State called one rebuttal witness, Gordon Harris, who was an officer at the Lauderdale County Detention Center, where Timmy Brewer was incarcerated. He testified that during an interview he overheard Brewer tell the prosecutor that neither Brewer nor Hunt had anything to do with the forgery.
After the jury found her guilty, Hunt moved for a judgment of acquittal or, in the alternative, for a new trial, on the grounds that (1) the court had erred in denying her motion for a judgment of acquittal at the conclusion of the State's case-in-chief and (2) that the trial court had erred in overruling her objection to the testimony of Dale Olive on the basis that it was inadmissible hearsay.[2] After the trial court denied her motion, she appealed to the Court of Criminal Appeals.
In its unpublished memorandum, the Court of Criminal Appeals held that Olive's testimony was admissible hearsay because it fell within the res gestae exception to the hearsay rule. The Court of Criminal Appeals also held that the trial court did not err in denying Hunt's motion for a judgment of acquittal at the end of the State's case-in-chief, because, it held, the State did present sufficient evidence to corroborate Horton's testimony. In so holding, the Court of Criminal Appeals relied on the following: (1) the testimony of Dale Olive, who stated that a female telephoned Rose Rentals and acquired the name "Jim Sak"; (2) the testimony of Hunt's boyfriend, Timmy Brewer, who stated that Hunt had lived with Brewer and Horton; and (3) the handwriting evaluation by the Department of Forensic Sciences, which, the Court of Criminal Appeals said, "did not rule out Hunt as a perpetrator of the crime . . . [and] does not prove or disprove her connection to the crime."
 I. Hearsay
Hunt first argues that the Court of Criminal Appeals erred when it held *Page 855 
that Olive's testimony regarding the phone conversation fell within the res gestae exception to the hearsay rule. She maintains that Olive's testimony falls within the definition of "hearsay," as provided in Rule 801, Ala. R. Evid., and that his testimony did not fall within any exception to the hearsay rule. The State argues that the testimony was admissible as part of the res gestae and that the only possible defect in Olive's testimony was that it was not properly authenticated. The State maintains that Hunt waived any objection on that basis by objecting only on the basis of hearsay.
In its unpublished memorandum, the Court of Criminal Appeals stated the following in holding that Olive's testimony fell within the res gestae exception to the hearsay rule:
 "[The testimony regarding] Hunt's statements [was] admissible [under] an exception to the hearsay rule. `The res gestae exception permits showing all that transpires with the main fact at hand and all that constitutes a spontaneous part of the transaction.' Lyde v. State, 605 So.2d 1255
(Ala.Crim.App. 1992) (citing Pope v. State, 586 So.2d 1003 (Ala.Crim.App. 1991)).
 "`. . . "Utterances made before the occurrence of the main fact may be admissible as part of the res gestae, if made as part of the principal transaction, in reference to or in contemplation of it, or if it tends to explain the intent, motive or purpose of the declarant." R. Williams, Williams' Alabama Evidence § 141 (1967).'
"Laney v. State, 643 So.2d 1024 (Ala.Crim.App. 1994).
 "Ascertaining the name of the person authorized to sign checks for Rose Rentals was essential in order to forge the check. Telephoning Rose Rentals and acquiring this information was part of the res gestae because it was an event inseparately connected to the crime and part of one continuous criminal transaction culminating in the forgery. The trial court properly overruled the objection."
We note, however, that the cases cited by the Court of Criminal Appeals, Lyde v. State and Laney v. State, were decided before the Alabama Rules of Evidence became effective on January 1, 1996. Hunt's trial, on the other hand, occurred more than one year after the adoption of the rules.
Professor Gamble has noted that the judicially created res gestae exception may not have survived "the enactment of the hearsay provisions in the Alabama Rules of Evidence because it is not expressly included in them." Charles W. Gamble, McElroy's Alabama Evidence § 262.01(2), p. 1262 (5th ed. 1996); see, also, Miller v. Keating, 254 F.2d 507, 509 (3d Cir. 1985) (rejecting the use of the term "res gestae" and noting that to be admissible a declaration must qualify under one of the hearsay exceptions set out in the Federal Rules of Evidence). Furthermore, in the Committee Comments to Rule 803(2), Ala.R.Evid., the Committee expressed its preference for terms other than the term "res gestae" in connection with the hearsay exception in Rule 803(2).[3] In fact, in *Page 856 
Berryhill v. State, 726 So.2d 297, 300 (Ala.Crim.App. 1998), the Court of Criminal Appeals itself cited Professor Gamble's treatise with approval when it noted that the Rules of Evidence describe the exceptions to the hearsay rule more accurately than prior caselaw applying the res gestae exception. We need not decide today whether, under our Rules of Evidence, Alabama recognizes a "res gestae exception" to the hearsay rule, because we conclude that under the Alabama Rules of Evidence Olive's testimony was not to be considered hearsay.[4]
Every analysis of a hearsay question should begin with the question whether the testimony is hearsay. If it is hearsay, then one must determine whether it is admissible hearsay. Rule 801(c), Ala. R. Evid., defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(a) defines a "statement" as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person to be an assertion." Rule 801(b) defines "declarant" as "a person who makes a statement." As noted by Professor Gamble, even a witness's own statement may be hearsay if the statement was made out-of-court. Gamble, supra, § 242.01(1)(a), p. 1103.
Hunt objected to Olive's testifying to the contents of a telephone call. The only parts of that call that could be hearsay are the questions the caller asked and the answers Olive gave. As to the questions asked, there exists a split of authority as to whether a question can be within the term "statement" as defined by Rule 801(a)(1). The federal courts that have addressed this issue have held that a question cannot be hearsay, on the basis that an inquiry is inherently nonassertive. See United States v. Oguns, 921 F.2d 442 (2d Cir. 1990); United States v. Long,905 F.2d 1572 (D.C. Cir. 1990), cert. denied, 498 U.S. 948 (1990); United States v. Lewis, 902 F.2d 1176 (5th Cir. 1990). At least one state court has agreed with that holding. See State v. Collins, 76 Wn. App. 496, 886 P.2d 243, cert. denied, 126 Wn.2d 1016,894 P.2d 565 (1995). But see People v. Jones, 228 Mich. App. 191,229 n. 3, 579 N.W.2d 82, 91 n. 3 (1996) (O'Connell, P.J., concurring in part and dissenting in part) (stating that questions containing indirect assertions of fact should be categorized as statements subject to the hearsay rule); Brown v. Commonwealth,25 Va. App. 171, 177-80, 487 S.E.2d 248, 251-52 (1997) (a question may be hearsay, depending upon the "nature of the question and the circumstances"); Carlton v. State, 111 Md. App. 436,681 A.2d 1181, 1184, cert. denied, 344 Md. 328, 686 A.2d 634 (1996) (same); State v. Rawlings, 402 N.W.2d 406 (Iowa 1987) (holding that the question "Dennis, what are you doing?" — offered to prove that "Dennis" was present — was hearsay).
The rationale behind the federal decisions and the Washington decision was that the definition of "statement" in Rule 801(a), Fed.R.Evid., and the Washington equivalent ("an oral or written assertion") excludes a statement containing only an "implied assertion," as opposed to a statement containing a positive declaration in which the declarant intended to assert a fact. See Long, 905 F.2d at 1579-80; *Page 857 
Lewis, 902 F.2d at 1179.[5] The rationale behind the decisions of the states adopting a different view has been that their rules of evidence deem declarations involving implied assertions to be "statements" and that questions often contain implied statements. See, e.g, Brown, supra, 25 Va. App. at 177-78, 487 S.E.2d at 251-52. "`For example, the question, "Do you need change?" impliedly asserts that the questioner has change. The question, "Why did you stab me, Brutus?" impliedly asserts that the questioner was stabbed by Brutus.'" Id. (citation omitted).
Alabama's rule defining the word "statement," although it is the same as its federal counterpart, is silent on whether a verbal declaration that only implicitly asserts something can be a statement. See Rule 801(a)(1), Ala.R.Evid.[6] The Advisory Committee's Notes to Rule 801(a) shed no light on the issue. They simply say that "[n]o definitional problem arises with regard to whether assertions in words fall within the ban on hearsay." In discussing whether conduct can be an implied assertion, the Notes specifically state that "Rule 801(a) excludes from the operation of the hearsay rule all evidence of conduct that is not intended as an assertion," because Rule 801(a)(2) includes "nonverbal conduct of a person" as "hearsay" only "if it is intended by the person as an assertion." Does this mean that by not including a similar limitation requiring that an utterance must also have been "intended by the person as an assertion," the Committee meant to embrace implied as well as express assertions, within the Rule 801(a)(1) definition of a "statement"? We hold that it did and thereby avoid the confusion that has been caused by the federal courts' interpretation of Rule 801(a), Fed.R.Evid., as explained in footnote 5, supra.
Thus, we conclude that whether a question is a "statement" for purposes of Rule 801(a), Ala. R. Evid., depends upon the nature of the question, the circumstances surrounding the question, and the fact sought to be proved by offering the question. Like practically all evidence issues, this issue must be decided on a case-by-case basis.
In the present case, the questions asked by the caller made no assertion, either expressly or implicitly. They did not state or imply the existence of any facts whatever. Thus, the questions were not hearsay. As for the answers given by Olive, the State did not offer them to prove that "Jim Sak" was the person who signed the checks. Instead, the State offered the answers to prove their effect on the caller. *Page 858 
Thus, Olive's testimony was not hearsay, and the trial court did not err when it overruled Hunt's objection to Olive's testimony regarding the telephone call.[7]
 II. Motion for Judgment of Acquittal
Hunt next argues that the Court of Criminal Appeals erred in affirming the trial court's denial of her motion for a judgment of acquittal and her motion to exclude Horton's testimony, both of which were made at the end of the State's case-in-chief. Hunt contends that the State did not produce the corroborating evidence required by § 12-21-222, Ala. Code 1975. Hunt also maintains that the Court of Criminal Appeals improperly considered the testimony of Timmy Brewer, because Brewer testified after the close of the State's case. Hunt also says that the evidence the State offered as corroboration of Horton's testimony raised nothing more than speculation or a suspicion that she was the guilty person, and she says this speculation or suspicion is not sufficient under Alabama law.
The State concedes that Horton was Hunt's accomplice, but maintains that the telephone call and the Department of Forensic Sciences report sufficiently corroborated Horton's testimony. We disagree.
Section 12-21-222, Ala. Code 1975, provides:
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
The Court of Criminal Appeals, explaining this statute, has written:
 "The formula applying the rule requires that evidence of the accomplice must first be `subtracted' and then, if upon the review of all other evidence before the court at the time of the motion, there is found to be sufficient incriminating evidence which would tend to connect the defendant with the commission of the offense, sufficient corroboration exists. Craig v. State, [376 So.2d 803, (Ala.Cr.App.), writ denied, 376 So.2d 807 (Ala. 1979)]; Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973). However, the corroborative evidence need not refer to any statement or fact testified to by the accomplice. Neither must it be strong [or] sufficient of itself to support a conviction. The probative value of the evidence need only legitimately tend to connect the accused with the crime and need not directly do so. Further, corroborative evidence need not directly confirm any particular fact [or] affirm each and every material fact testified to by the accomplice. Corroboration may be proven by circumstantial evidence alone. Craig, supra."
Mills v. State, 408 So.2d 187, 191 (Ala.Crim.App. 1981).
The Court of Criminal Appeals has also added the following caveats to the rule:
 "`The tendency of the corroborative evidence to connect accused with the crime, or with the commission thereof, must be independent, and without the aid, of any testimony of the accomplice; the corroborative evidence may not depend for its weight and probative value on the testimony of the accomplice, and it is insufficient if it tends to connect accused with the offense only when given direction or interpreted by, and read in conjunction with, the testimony of the accomplice.' 23 C.J.S. Criminal Law, Section 812(b) (1961)."
Mills v. State, 408 So.2d at 191-92.
 "`"[E]vidence which merely raises a conjecture, surmise, speculation, or suspicion that accused is the guilty person *Page 859 
is not . . . sufficiently corroborative of the testimony of an accomplice to warrant a conviction." 23 C.J.S. Criminal Law, Section 812(5)(b).' Staton v. State, 397 So.2d 227, 232 (Ala.Cr.App. 1981)."
Steele v. State, 512 So.2d 142, 143-44 (Ala.Crim.App. 1987).
Applying these standards, we conclude that the Court of Criminal Appeals erred in affirming the denial of Hunt's motion for a judgment of acquittal and her motion to exclude. First, Hunt is correct in arguing that the Court of Criminal Appeals improperly considered the testimony of Timmy Brewer. As is stated in Mills, supra, the trial court's ruling on a motion for a judgment of acquittal and motion to exclude accomplice testimony must be judged on the evidence that is before the trial court at the time of the motion. See, also, Steele v. State, supra, 512 So.2d at 144-45 (stating that evidence introduced after the defendant moves for a judgment of acquittal and moves to exclude cannot be considered in reviewing a trial court's ruling on a motion to exclude, because such evidence is outside the scope of review and "cannot be used to support the jury's verdict") and the Committee Comments to Rule 20.2(c), Ala.R.Crim.P., stating that "[u]nder section (c) the error in overruling the motion [for judgment of acquittal] cannot be cured by subsequent evidence offered by either the defendant or the state." Thus, we cannot consider Timmy Brewer's testimony in our analysis.
Second, after we apply the "subtraction process" and view the remaining evidence in the light most favorable to the State, we are left only with the testimony that a female made a telephone call to Rose Rentals and a forensic report that is inconclusive at best. This evidence is insufficient to connect Hunt to the crime. The forensic report cannot be considered sufficient corroborating evidence, because it raises nothing more than a mere speculation that Hunt forged the signature. If we gave this report any weight, we would violate the rule that evidence that merely raises a conjecture is insufficient to corroborate an accomplice's testimony. See Steele, supra. Furthermore, the only way to give any weight whatever to Olive's testimony is to read it in conjunction with Horton's testimony that Hunt was the caller. Mills, supra, prohibits us from doing so. Moreover, the fact that a female who may or may not have been Hunt telephoned Rose Rentals does not independently link Hunt to the crime, as required by Mills, supra. In fact, the State's evidence offered as corroboration tends to show only that a female who may or may not have been Hunt committed the crime. This only narrows the group of possible forgers to more than half of the adult population, and it is therefore insufficient to connect Hunt to the crime.
The trial court should have granted Hunt's motion to exclude and her motion for a judgment of acquittal. The Court of Criminal Appeals erred in affirming the trial court's judgment. Accordingly, we reverse the judgment of the Court of Criminal Appeals and render a judgment of acquittal.
REVERSED AND JUDGMENT RENDERED.
Hooper, C.J., and Maddox, Houston, Cook, See, and Johnstone, JJ., concur.
Brown, J., recuses herself.
[1] Because we render a judgment of acquittal, we do not address Hunt's claim that the State failed to disclose certain evidence, in violation of Brady v. Maryland, 373 U.S. 83 (1963).
[2] As indicated in note 1, Hunt also claimed that the State committed a Brady violation. She also maintained that the court had erred in refusing to give certain requested jury instructions. However, because those issues are not pertinent to the resolution of this case, we do not address them.
[3] Also, as noted by the Committee, this Court criticized the use of the res gestae exception in Illinois Central R.R. v. Lowery, 184 Ala. 443, 63 So. 952 (1913). Borrowing a description from Professor Wigmore, this Court stated in that case:
 "[T]he term `res gestae' is one of `convenient obscurity,' and is wholly unnecessary as an explanation of the testimonial use of declarations made out of court. It has in fact too often served only to obscure the real principles upon which such declarations may be properly admitted as evidence of the truth of the facts declared.
". . . .
 "As said by Chief Justice Bleckley: `The difficulty of formulating a description of the res gestae which will serve for all cases seems insurmountable. To make the attempt is something like trying to execute a portrait which shall enable the possessor to recognize every member of a numerous family.' Cox v. State, 64 Ga. 374, 410 (37 Am.Rep. 76)."
184 Ala. at 447-48, 63 So. at 953.
[4] We also question whether the telephone conversation, as detailed by Olive, would constitute part of the res gestae. As this Court noted in Illinois Central R.R. v. Lowery, supra,184 Ala. at 447-48, 63 So. at 953, a declaration, to be admissible under our formulation of the res gestae exception, must be "the apparently spontaneous product of that occurrence operating upon the visual, auditory, or other perceptive senses of the speaker" and "[t]he declaration must be instinctive rather than deliberative — in short, the reflex product of immediate sensual impressions, unaided by retrospective mental action." Nothing in the record indicates that the caller's statement was spontaneous or reflexive.
[5] Commentators have sharply criticized this rationale. See G. Michael Fenner, Law Professor Reveals Shocking Truth About Hearsay, 62 UMKC L.Rev. 1, 72-77 (1993); Roger C. Park, "I Didn't Tell Them Anything About You": Implied Assertions as Hearsay Under the Federal Rules of Evidence, 74 Minn.L.Rev. 783, 796 (1990). As noted by Professor Fenner, the rationale causes "silly" and often complex disputes such as whether Caesar actually said "`Et tu Brutus?', or was it really `Et tu Brutus!', with perhaps a compromise at a resigned `Et tu Brutus.'" 62 UMKC L. Rev. at 74. In fact, this confusion and the complexity have prompted a proposed amendment to Rule 801(a), Fed.R.Evid. See The Evidence Project, 171 F.R.D. 330, 609-16 (1997). This amendment would broaden the definition of "statement" to include "all speech and writing, as well as any action that communicates a message." Id. at 609-10. According to the advocates of the amendment, this definition would be more in line with the common-law hearsay rule, which "excluded statements if their logical relevance depended on the truth of the matter expressed or implied." Id. at 610.
[6] The Court of Criminal Appeals has twice addressed the issue whether a question can be an assertion. In Inmin v. State,654 So.2d 86, 90 (Ala.Crim.App. 1994), that court held that the question "Do you know if [the victim] keeps money?" — asked by the defendant's wife — was not an assertion. See, also, Drinkard v. State, [Ms. CR-95-0055, December 18, 1998] ___ So.2d ___ (Ala.Crim.App. 1998), which is now before this Court on a petition for certiorari review. In Inmin, the court left open the question and said, "We need not decide whether a question can ever qualify as an `assertion' for purposes of the hearsay rule. We hold only that the particular out-of-court utterance here was not offered as an assertion. . . ." 654 So.2d at 90.
[7] As the State notes, the cases cited by Hunt stand for the proposition that a telephone conversation that is not authenticated is not admissible if the opponent objects on the grounds of improper predicate or improper foundation. However, Hunt objected only on the basis of hearsay, thereby waiving all other objections.